UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 95 CR 242 |
| vs. | ) | Judge Robert Gettleman |
| | ) | |
| ANDREW PATTERSON, et. al | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANTS'**
**MOTIONS PURSUANT TO 18 U.S.C. § 3582(C)**

THE UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully submits this Response to Defendants' Motions Pursuant to 18 U.S.C. § 3582(c). Defendants Durwin Baker, Terry Clark, Willie Conner, Maurice Foster, Gregory Hubbard, Andrew Patterson, Andrew L. Patterson, Henry Patterson, Jerry Patterson, Lennell Patterson, Odell Sumrell, Edgar Williams, Andre Williams, Edgar Williams and Tyrone Williams have each either filed a pro se motion seeking relief pursuant to 18 U.S.C. § 3582; contacted the Court by mail indicating a desire for relief pursuant to § 3582, and/or filed, via counsel, a formal motion pursuant to § 3582. Each of the defendants has joined in the formal motion filed by counsel for Durwin Baker. As discussed below, the motions should be denied.

1.      **Procedural History**

a)      **The Charges and Trial**

These defendants, in addition to others, were charged in a 36-count superseding indictment with one count of racketeering conspiracy, 18 U.S.C. § 1962(d) (Count One), and one count of narcotics conspiracy, 21 U.S.C. § 846 (Count Two). R.411.  Count One alleged a RICO conspiracy to distribute heroin, cocaine and cocaine base, and to protect their illegal activity by bribing law enforcement officers.  *Id.*  Count Two alleged a conspiracy to distribute cocaine, crack cocaine and heroin.  *Id.*  Many of the defendants were also charged with individual firearms offenses in Counts Three through Thirty Six pursuant either to 18 U.S.C. § 924(c) for using and carrying firearms at various times during and in relation to the narcotics conspiracy, or 18 U.S.C. § 922(g) for possession of firearms having previously been convicted of a felony.   *Id.*

These defendants, among others,  stood trial jointly, beginning on January 22, 1996 and concluding on June 7, 1996.  R.539-1028.  At the conclusion of the trial, the jury found the defendants guilty as follows:

Durwin Baker - Counts One, Two, and Twenty-Two.  R. 1004.

Terry Clark - Counts Two, Twenty-Three and Twenty-Four.  R.1006.

Willie Conner - Counts Two and Twenty-Five.  R. 1008.

Maurice Foster - Count Two.  R. 1014.

2

Gregory Hubbard - Counts One,  Two and Twenty-Eight. R. 1016.

Andrew Patterson  - Counts One and Two.  R.992.

Andrew L. Patterson - Count Two.  R.998.

Henry Patterson - Counts One, Two, and Thirteen.  R.996.

Jerry Patterson - Counts One, Two, and Thirty-One.  R. 1020.

Lennell Patterson - Counts One and Two.  R. 1022.

Odell Sumrell - Counts One and Two.  R.1026.

Andre Williams - Counts One, Two, Fifteen through Twenty-One. R.1002

Edgar Williams - Counts One and Two. R. 1028.

Tyrone Williams - Count Two.  R.1000.

**b)      Sentencing** [1]

Though the charged conspiracy involved the distribution of heroin, powder cocaine and crack cocaine, each defendant's base offense level was determined based on the amount of crack cocaine attributable to each defendant.  The court calculated this figure based on factual findings concerning the length of each defendant's participation in the conspiracy, and the approximate amount of crack cocaine distributed by the conspiracy on a regular basis.

---

[1]Exhibit A contains a summary chart of the defendants' sentences.

Shortly after the close of the evidence at trial, the court made factual findings on the duration of each defendant's participation in the conspiracy.[2] The court found as follows for the defendants joining in this motion:

Durwin Baker - at least December 1991 to February 1992. (GVO at 35.)

Terry Clark - at least July 1991 to April 1995. (GVO at 35.)

Willie Conner - at least December 1991 to April 1995. (GVO at 36.)

Maurice Foster - at least July 1991 to April 1992. (GVO at 37.)

Gregory Hubbard - at least December 1991 to October 1993. (GVO at 38.)

Andrew Patterson - at least 1991 to April 1995. (GVO at 28.)

Andrew L. Patterson - at least October 1991 to April 1995. (GVO at 31.)

Henry Patterson - July 1991 through April 1995. (GVO at 30.)

Jerry Patterson - at least July 1991 to April 1995. (GVO at 39.)

---

[2]According to the government's version of the offense, which set forth these factual findings, this proceeding took place "at the time that special verdicts were submitted to the jury." *See* Government's Version at 27. The government has reviewed the trial transcript from the beginning of closing arguments, through the instruction of the jury and the submission of the verdict forms to the jury , until the announcement of the jury's verdicts for each defendant, including sidebars and proceedings out of the presence of the jury, and has been unable to locate this proceeding in the transcript. The government has also reviewed the docket sheet from the conclusion of the trial through December 27, 1996, when the government's version was prepared, looking for any hearings on sentencing issues and was unable to find any such entry. The government consulted with several defense counsel who were unable to recall when the hearing at issue took place. Therefore, the government is relying on the government's version for the court's factual findings on this issue, and will provide a copy of the government's version (hereinafter "GVO") to the court and to each defendant's counsel.

Lennell Patterson - October 1991 to April 1995. (GVO at 40.)

Odell Sumrell - at least July 1991 to April 1995. (GVO at 41.)

Andre Williams - at least July 1991 to February 1992. (GVO at 33.)

Edgar Williams - at least July 1991 to April 1995. (GVO at 42.)

Tyrone Williams - at least July 1991 to February 1992. (GVO at 32.)

On July 10, 1997, the trial court held a joint sentencing hearing, during which it heard testimony and argument on whether the substance at issue was indeed crack cocaine within the meaning of the U.S. Sentencing Guidelines. R. 1504.[3] Following the hearing, the trial court determined that the government had proven by a preponderance of the evidence that the substance distributed by the defendants was crack cocaine. R.1252.

Thereafter, the trial court held individual sentencing hearings for each of the defendants wherein it made factual findings concerning the quantity of crack cocaine attributable to each defendant. At the time these defendants were sentenced, USSG § 2D1.1(c)(1)(1995)[4] provided for a base offense level of 38 in

---

[3] The government will provide defense counsel and the Court with a disk containing the transcript of this hearing as well as transcripts of the individual sentencing hearings for each of the defendants.

[4] Unless specified otherwise, all citations to the United States Sentencing Guidelines will be to the 1995 edition. The PSI for each of these defendants indicates that the 1995 Guidelines edition was used in calculating each defendants' applicable guideline range.

cases involving, among other things, 30 kilograms or more of heroin, 150 kilograms or more of cocaine, or 1.5 kilograms of cocaine base, which was defined in USSG § 2D1.1(c) Commentary, Application Note (D), as "crack . . . a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." *Id.*

### i. Durwin Baker

Durwin Baker was sentenced on October 6, 1997 to a term of 195 months on Counts 1 and 2 of the superseding indictment, to be served concurrently, and a consecutive term of 60 months on Count 22, a §924(c) charge. R. 1347, 1505-2 at 22. The court initially determined that Baker's offense level was 38, pursuant to USSG § 2D1.1(c)(1)(1995), but then reduced his offense level by three points after determining that Baker was a minimal participant in the offense. R.1505-2 at 17. The court determined that Baker's total offense level was 35, and his criminal history category was II, and adopted the factual findings and guideline application in the presentence investigation report. *See* Baker SOR.[5] Baker's PSI noted,

> [t]he testimony of cooperating codefendants has established that the Patterson Family Enterprise distributed more that [sic] 150

---

[5]Since the Statement of Reasons ("SOR") is not included with the judgment and commitment order in the court file, the government has provided each defense counsel with an electronic copy of the SOR pertaining to his/her defendant, and will provide copies to the court as well.

kilograms of cocaine, cocaine base and large quantities of heroin. This amount of crack cocaine was reasonably foreseeable to the defendant due to the open and longterm nature of the sales, the scope of his participation, knowledge and associations with his coconspirators, resulting in a base offense level of 38 under guideline 2D1.1(a)(3)(c)(1).

Baker PSI at 12.

### ii. Terry Clark

Terry Clark was sentenced on August 7, 1997 to a term of 240 months on Count 2 of the superseding indictment, and 60 months on Count 23, a §924(c) charge, to run consecutively to the sentence in Count 2. R.1381 at 56. He received a 120 month concurrent sentenced on Count 24. R.1381 at 56. The court determined that Clark's total offense level was 38 and his criminal history category was III. *Id.* at 50-51. The court adopted the factual findings and guideline application in the presentence report. Clark SOR. The PSI stated that Clark's base offense level was 38 "because the Patterson family enterprise distributed more that [sic] 150 kilograms of cocaine, 1.5 kilograms of cocaine base and large quantities of heroin." Clark PSI at 10.

In determining Clark's offense level, the court noted,

I have reviewed this matter very thoroughly, and based on my review of all the documents I have mentioned for not only Mr. Clark but other defendants as well, the court finds that the government has met its burden of proving by a preponderance of the evidence that this defendant reasonably foresaw that more than one and a half kilograms of crack was distributed during his participation in

the conspiracy for which he was convicted. And this is even giving him the credit for the time that he was not on the street but in state custody. . . . he was part of an organization that distributed huge amounts of crack cocaine. That was what he was convicted of in Count 2. The evidence showed that this was as much as 500 grams a day; three days' worth would be one and a half kilograms. . . .the average, the average bag of the exhibits of drug -- of the crack exhibits was .21 grams, and there were 40 packs a day. There were 60 bags in a pack. That's 2400 bags a day times .21 is 504 grams a day. It is just a simple matter of math . . . And I don't base it just on the math either. I base it on the overwhelming evidence of the size of this conspiracy. We had testimony about the number of customers who would come. There was some days when they would line up up the street. There would be traffic jams there were so many customers. . . This was a large operation catering to a large number of people selling huge quantities of drugs.

R.1335 at 5-7.

The court further found,

So under Guideline 1B1.3A1, a drug conspirator is held accountable quantitatively for all drug transactions that he was aware of or that he reasonably could have foreseen. Due to the highly organized manner in which the drug operation was carried on on the 2700 block of West Flournoy, the evidence establishes that this defendant knew or reasonably foresaw that more than one and a half kilograms of crack was being sold during the time he participated in the conspiracy. So that will be my ruling on quantity. And I will make similar rulings just so there is no secret here, obviously. I will being [sic] making similar rulings for the other defendants as well.

R. 1335 at 8-9.

Clark was subject to a mandatory minimum of twenty years pursuant to

21 U.S.C. § 851, as a result of a prior narcotics conviction. *See* Clark PSI at 21.

8

The government filed a notice of intent to seek statutory enhanced penalties

against Clark on January 17, 1996. *See* R.517.

### iii.   Willie Conner

Willie Conner was sentenced on October 1, 1997 to a term of imprisonment of 235 months on Count 2 of the superseding indictment and a consecutive term of 60 months on Count 25.  R.1541 at 10.  The court determined that the defendant's total offense level was 38 and his criminal history category was 1. R.1541 at 10-11.  The court adopted the factual findings and the guideline application in the presentence report in which the probation office noted that "the Patterson family enterprise distributed more that [sic] 150 kilograms of cocaine, cocaine base and large quantities of heroin."  *See* Conner SOR; Conner PSI at 9.  At Conner's sentencing, the government noted, as the court considered whether to allow Conner a two-point reduction for minor participation, "he's not being held accountable for the entire amount of drugs distributed by the organization, only for three days' worth of narcotics dealing."  R. 1541 at 6.

### iv.   Maurice Foster

Maurice Foster was sentenced on October 17, 1997 to a term of imprisonment of 360 months on Count Two of the indictment.  R.1520, 1542 at 17.  The court determined that Foster's total offense level was 40 and his criminal history category was IV.  Foster SOR.  The court adopted the factual findings and guideline application in the presentence report.  *Id.*  The PSI indicated that:

The total amount of narcotics sold during the conspiracy was more than 150 kilograms of cocaine, cocaine base, and large quantities of heroin . . . even though the defendant was not involved for the entire duration of the conspiracy, for the time that he was involved, from July 1991 until April 1992, the organization distributed a minimum of two kilograms of crack cocaine a week. Therefore . . . the amount of crack cocaine or cocaine base attributed and foreseeable to the defendant is at least 1.5 kilograms.

PSI at 3, 7.

At Foster's sentencing hearing, the court stated as follows:

The court has previously made a finding regarding this that the conspiracy distributed at least a half kilogram of crack cocaine per day. That means to get to the 1.5 kilogram level, which is the maximum under the guidelines, a defendant would only have to be involved or it would only need to be reasonably foreseeable to the defendant that there were three days of crack cocaine dealing out there on the spot on the 2700 block of West Flournoy. Mr. Foster was involved for a far lengthier time than three days. Mr. Young would like to point to just the days that he's on tape out there and say that Mr. Foster is only involved for a three-week period. That in and of itself is sufficient, because obviously three weeks is more than three days, but then there is also the testimony of cooperating defendant who placed Mr. Foster out there for a significantly longer period of time. But the only finding that the Court needs to make is that he was involved for at least three days, three days of drug dealings is reasonably foreseeable to him. So the 1.5 kilos of cocaine as the basis for using the -- to determine the offense level is correct."

R.1542 at 5.

Foster was subject to a mandatory minimum of twenty years pursuant to

21 U.S.C. § 851 as a result of a prior narcotics conviction. The government filed

11

a notice of intent to seek statutory enhanced penalties against Foster on January 17, 1996.  R.531.

### v.    Gregory Hubbard

Gregory Hubbard was sentenced on December 29, 1997 to a total term of imprisonment of 295 months consisting of two concurrent 235-month terms on Counts One and Two of the superseding indictment, and a consecutive 60 months on Count Twenty-Eight, a §924(c) offense.   R.1386,   The court determined that his total offense level was 38 and his criminal history category was I.   R.1386; Hubbard SOR.   The court adopted the factual findings and guideline application in the presentence report, which noted, "the total amount of narcotics sold during the conspiracy was more than 150 kilograms of cocaine, cocaine base, and large quantities of heroin."   Hubbard PSI at 6; Hubbard SOR.

At Hubbard's sentencing, the court noted,

> I find that the evidence establishes that members of this conspiracy were responsible for their time that the evidence established that they were on the street selling, selling at least two kilograms of crack cocaine per week at a rate of approximately 500 grams a day. . . And certainly, Mr. Hubbard was identified on the tapes and in the testimony as being involved in selling the drugs for a sufficient time to reach the conclusion that the government suggests.

R.1543-2 at 9.

### vi.    Andrew Patterson

On January 30, 1998, Andrew Patterson ("Andrew") was sentenced to two concurrent life terms on Counts One and Two of the superseding indictment; a concurrent 120 month term on Count Five, a § 922(g) offense; and a consecutive

13

120 month term on Count Three, a § 924(c) offense.  R. 1530 at 23; R. 1639.  The court determined that Andrew's total offense level was 42, the result of a base offense level of 38, based on the amount of narcotics attributable to him, and a four-point enhancement pursuant to USSG § 3B1.1(a), and that his criminal history category was II. R.1530 at 11, 13.  The court adopted the factual findings and guideline application in the presentence report, which set forth as follows: "the Patterson family enterprise distributed more than 150 kilograms of cocaine, more than 1.5 kilograms of cocaine base, and large quantities of heroin." Andrew Patterson PSI at 6.  During Andrew's sentencing, the court noted,

> I made findings that the quantities were sufficient enough to reach the guideline maximum very quickly, within a couple of days.  This went on for many, many months and years actually.

R.1530 at 5.

Andrew was subject to a mandatory minimum of twenty years pursuant to 21 U.S.C. § 851 as a result of a prior narcotics conviction.  The government filed a notice of intent to seek statutory enhanced penalties against Andrew on January 17, 1996.  R.521.

**vii.   Andrew L. Patterson**

Andrew L. Patterson ("Andrew L.")was sentenced on August 14, 1997 to a term of 310 months imprisonment on Count Two of the superseding indictment.  R. 1277.  The court determined that his total offense level was 40,

14

as a result of a base offense level of 38 and a two-point enhancement pursuant to USSG §2D1.1(b)(1) for the possession and use of a firearm during the offense, and his criminal history category was I. *See* Andrew L. Patterson PSI at 6; Andrew L. Patterson SOR. The court adopted the factual findings and guideline application in the presentence report, with the exception of refusing to apply enhancements for a supervisory role in the offense. *Id.* On the issue of drug quantity, the PSI noted, "the drug conspiracy . . . involved the sale of more than 150 kilograms of cocaine, cocaine base and large quantities of heroin . . . more than 1.5 kilograms of cocaine base." *See* Andrew L. Patterson PSI at 2,6. During the sentencing, the court noted,

> I believe the government has met its burden of proving by a preponderance of the evidence or otherwise that these defendants as well as the others who were convicted of Counts 1 or 2 reasonably foresaw that more than one and a half kilograms of crack cocaine were distributed during his participation or their participation in the conspiracy and that the scope of their agreement covered that amount of drugs. Mr. Lennell Patterson was a street seller. And Maine Patterson was allegedly at least a supervisor and obviously intimately involved in the conspiracy and in the drug operation. The average bag was .21 grams according to the testimony I heard, and there was nothing to the contrary. It's 60 bags in a pack and 40 packs a day. That was over 500 grams in a day. All you have to do is have three days worth of involvement in this operation, and you've got more than one and a half kilos of crack. Under 1B1.3, a conspirator is held accountable quantitatively for all of the drug transactions that he was aware of or could reasonably foresee. I just think the overwhelming proof in this case was that the drug operation on the 2700 block of West Flournoy dealt with far more than that amount in any given period of time.

15

R.1508 at 35-37.

### viii.  Henry Patterson

Henry Patterson ("Henry") was sentenced on August 12, 1997, to a term of imprisonment of concurrent 340-month terms on Counts One and Two of the superseding indictment, and a consecutive 60 months on Count Thirteen, a §924(c) offense, following a determination that his total offense level was 41 and his criminal history category was I.  R. 1276; H.Patterson transcript at 19.  The court determined that Henry's base offense level was 38 and increased the base offense level by three points pursuant to USSG § 3B1.1(b) as a result of his supervisory role in the offense.  *See* H.Patterson PSI at6; H.Patterson transcript at 18-20.  The court adopted the factual findings and guideline application in the presentence report, which noted, "the Patterson family enterprise distributed more than 150 kilograms of cocaine, more than 1.5 kilograms of cocaine base, and large quantities of heroin." H.Patterson PSI at 6; H.Patterson SOR.  During Henry's sentencing, the court  stated, "the evidence is quite clear that huge quantities of crack were being distributed on the street.  Under my calculations, it was over 500 grams a day.  That's a lot of crack.  It certainly was enough to satisfy the quantity requirement under both the guidelines and the statute." H.Patterson transcript  at 17.

16

### ix. Jerry Patterson

Jerry Patterson ("Jerry") was sentenced on September 22, 1997 to two concurrent 240-month terms on Counts One and Two of the superseding indictment, also concurrent with three state court sentences, and a consecutive 60 month term on Count Thirty-One, a § 924(c) charge. R. 1318; R.1505-1 at 11. The court found his total offense level was 38 and his criminal history category was I. R.1505-1 at 4. The court adopted the factual findings and guideline application in the presentence report, which stated, "the total amount of narcotics sold during the conspiracy was more than 150 kilograms of cocaine, cocaine base, and large quantities of heroin . . . . the distribution of at least 1.5 kilogram of cocaine base (crack cocaine was foreseeable to, and is attributed to the defendant and his codefendants." *See* Jerry Patterson SOR; Jerry Patterson PSI at 3, 6. During the sentencing, Jerry accepted the factual recitation in the PSI. R.1505-1 at 5.

### x. Lennell Patterson

On August 14, 1997, Lennell Patterson ("Lennell") was sentenced to life in prison. R.1278. He was subject to a mandatory minimum of life imprisonment pursuant to 21 U.S.C. § 851, as a result of prior narcotics convictions: the government had filed a notice of intent to seek statutory enhanced penalties against him on January 17, 1996. R.529. Lennell appealed

17

his August 14, 1997 sentence on August 18, 1997. R.1284. While his appeal was pending, the parties jointly moved to resentence him pursuant to the applicable sentencing guidelines after the government decided to rescind the § 851 notices seeking life sentences in the cases of several of Lennell's codefendants. R.1466. The court granted the motion. R. 1468.

Lennell was resentenced on October 20, 1997, to two concurrent 210-month terms on Counts One and Two of the superseding indictment, following a determination that his total offense level was 37 and his criminal history category was I. R. 1348; Lennell Patterson SOR. The court adopted the factual findings and guideline application in the presentence report, which stated, "the drug conspiracy . . . involved the sale of more than 150 kilograms of cocaine, cocaine base and large quantities of heroin . . . the Patterson family enterprise distributed more that [sic] 150 kilograms of cocaine and large quantities of heroin." Lennell Patterson PSI at 6, 9; Lennell Patterson SOR. Lennell was sentenced jointly with Andrew L. Patterson: the court's comments, mentioning both defendants by name, appear in the "Andrew L. Patterson" section above. R.1508 at 36-37.

### xi. Odell Sumrell

Odell Sumrell was initially sentence to a life term of imprisonment on December 19, 1997. R.1384. He was subject to a mandatory minimum of life

imprisonment pursuant to 21 U.S.C. § 851 as a result of prior narcotics convictions. The government filed a notice of intent to seek statutory enhanced penalties against him on January 17, 1996. R.528. Sumrell appealed his sentence on December 23, 1997. R.1382. While his appeal was pending, the parties jointly moved to resentence him pursuant to the applicable sentencing guidelines after the government decided to rescind the § 851 notices seeking life sentences in the cases of several of his codefendants. R.1466. The court granted the motion. R. 1468.

Sumrell was resentenced on August 6, 1998 to concurrent 360-month terms on Counts One and Two of the superseding indictment. R.1512 at 17. The court found that he had a total offense level of 40 and a criminal history category of III. R.1512 at 17. The court adopted the factual findings and guideline application in the presentence report, which stated "the Patterson family enterprise distributed more than 150 kilograms of cocaine, more than 1.5 kilograms of cocaine base, and large quantities of heroin." Sumrell PSI at 6.

During Sumrell's sentencing, the court noted,

> Just for the record, there was overwhelming evidence that the quantities here exceeded the cap within a matter of days, and all you had to do was participate in this conspiracy for a matter of days to basically fit that conclusion. So I have ruled that way in each of the defendants and I have seen no reason with Mr. Sumrell to change that.

19

R.1512 at 11-12.

### xii.   Andre Williams

Andre Williams ("Andre") was sentenced on April 10, 1998, to two concurrent 360-month terms on Counts One and Two of the superseding indictment[6]; two concurrent 120-month terms on Counts Sixteen through Twenty-One, both § 922(g) charges; and a consecutive 120 months on Count Fifteen, a § 924(c) charge.  R.1443.  The court determined that his total offense level was 41 and his criminal history category was VI.  A.Williams SOR.  The court adopted the factual findings and guideline application in the presentence report, which stated, "the total amount of narcotics sold during the conspiracy was more than 150 kilograms of cocaine, cocaine base and large quantities of heroin."  A.Williams PSI at 2; A.Williams SOR.  Andre's total offense level of 41 was the result of a base offense level of 38 and a three level enhancement for a leadership role pursuant to USSG § 3B1.1(b).  A.Williams PSI at 6.   Andre's criminal history category of VI was the result of the operation of the career offender guideline, USSG § 4B1.1(a).  See A. Williams PSI at 8, 10.

---

[6]The government initially sought a life sentence pursuant to 21 U.S.C. §851, but then rescinded the §851 notice and sought a guidelines sentence.  *See* A.Williams PSI at 15;  A.Williams Tr. at 2,9-10; R. 524, 1434, 1439.

### xiii.   Edgar Williams

Edgar Williams ("Edgar") was sentenced on May 14, 1998 to two concurrent 235-month terms on Counts One and Two of the superseding indictment.[7] R.1458.   The court determined that his total offense level was 38 and his criminal history category was I.  E.Williams SOR.  The government agreed to a reduction pursuant to USSG § 5C1.2 which enabled the court to sentence Edgar below the 20-year mandatory minimum otherwise applicable to him.  R.1532 at 15.  Edgar's judgment and commitment order does not reflect whether the court adopted the factual findings and guideline application in the presentence report. *See* E.Williams SOR.  However, during Edgar's sentencing, the court declined to consider sentencing arguments concerning the firearms charge against Edgar, and th 100-to-1 crack cocaine disparity, stating, "I've ruled on that with other . . . defendants and those rulings will stand.  The quantity rulings will stand. The gun rulings will stand . . .it took only a couple of days of this operation to max out on the quantities." R.1515 at 3.

---

[7]The government initially sought a life sentence pursuant to 21 U.S.C. §851, but then rescinded the §851 notice and sought a guidelines sentence.  *See* R. 524, 1434, 1439.

22

### xiv.  Tyrone Williams

Tyrone Williams ("Tyrone") was sentenced on April 10, 1998 to a term of life imprisonment on Count Two of the superseding indictment.[8]  R.1441.  The court determined that his total offense level was 43, as a result of a base offense level of 38, a three level enhancement for leadership pursuant to USSG § 3B1.1, and a two point enhancement for the use of a firearm pursuant to USSG §2D1.1(b)(1); and further determined that his criminal history category was VI as a result of the operation of the career offender guideline, USSG §4B1.1(a).  R.1531 at 6; T.Williams PSI at 5-6.  The Court adopted the factual findings and guideline application in the presentence report, which stated, "[t]he total amount of narcotics sold during the conspiracy was more than 150 kilograms of cocaine, cocaine base and large quantities of heroin."  *See* T.Williams SOR; T.Williams PSI at 2-3.

On remand from the Seventh Circuit following appeal, the Court later amended Tyrone's sentence to 360 months imprisonment.  R.1640.  The Court recalculated Tyrone Williams' total offense level at 41 by striking the enhancement for the use of a firearm pursuant to USSG §2D1.1(b)(1).  VI.  *See* T.Williams SOR.  His criminal history category of VI did not change on remand.

---

[8]The government initially sought a life sentence pursuant to 21 U.S.C. §851, but then rescinded the §851 notice and sought a guidelines sentence instead. R.526, 1435, 1440.  However, pursuant to the guidelines, Tyrone still received a life sentence.

### c) Appeals

All of the defendants involved in the current motions appealed the jury's verdicts: the appellate court affirmed the convictions (but remanded Tyrone Williams' case for resentencing) in an opinion issued a few weeks before the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). See *United States v. Patterson*, et. al., 215 F.3d 776 (7th Cir. 2000).

The defendants then filed a petition for certiorari before the Supreme Court. Shortly thereafter and in light of the *Apprendi* decision, the Supreme Court instructed the Seventh Circuit to reconsider sentencing issues pertaining to Andrew Patterson, Henry Patterson, Andrew L. Patterson, Tyrone Williams, Maurice Foster, and Odell Sumrell, while denying certiorari regarding the cases of Durwin Baker, Terry Clark, Willie Connor, Gregory Hubbard, Jerry Patterson, Lennell Patterson, Andre Williams, and Edgar Williams. *Patterson v. United States*, 121 S.Ct.621 (2000).

On remand, the Seventh Circuit again affirmed the convictions of Andrew Patterson, Henry Patterson, Andrew L. Patterson, Tyrone Williams, Maurice Foster, and Odell Sumrell, as well as the sentences of all of these defendants except Tyrone Williams, whose case was remanded to the trial court for resentencing as a result of the operation of USSG § 2D1.1(b)(1), a two level enhancement for the use of a firearm during the narcotics offense, in Tyrone

Williams' particular situation.[9]  *United States v. Patterson*, 241 F.3d 912 (7th Cir. 2001).

On October 1, 2001, the Supreme Court denied the petition for certiorari brought by several of the defendants concerning the Seventh Circuit's decision on remand.  *Patterson v. United States*, 122 S.Ct. 124, 151 L.Ed.2d 79, 70 USLW 3237 (Oct 01, 2001).

**2.    The Guidelines Amendment**

**a.    Amendment 706**

On November 1, 2007, the United States Sentencing Commission modified the drug quantity thresholds in the drug quantity table appearing at USSG § 2D1.1(c) by adjusting sentences for crack cocaine offenses downward by two levels.  *See* USSG Supplement to Appendix C, Amend. 706; *cf.* USSG § 2D1.1(c) (2006), USSG § 2D1.1(c)(2007).  The Commission viewed the amendment "as an interim solution to some of the problems associated with the 100-to-1 drug quantity ratio" between penalties for crack cocaine and those for powder cocaine by assigning "base offense levels that provide guideline ranges that include the

---

[9]Tyrone Williams was acquitted of firearms charges against him but convicted of the conspiracy in Count Two.  Had he been convicted of the firearms charge, his final sentencing range would have been 420 months to life .  *United States v. Patterson*, et. al., 215 F.3d 776, 786 (7th Cir. 2000).  However, though acquitted of the firearms charge, Williams incurred two additional points in his guideline range due to the operation of USSG § 2D1.1(g)(1), resulting  in a higher sentence (life) would have received had he been convicted of the firearms charge. *Id.*

statutory mandatory minimum penalties for crack cocaine offenses" that would "result in a reduction in the estimated average sentence of all crack cocaine offenses." USSG Supplement to Appendix C, Amend. 706.

Previously, the Commission had set the crack offense levels in Section 2D1.1 above the range which included the mandatory minimum sentence. Under the amendment, the Commission has set the offense levels so that the resulting guideline range includes the mandatory minimum penalty triggered by that amount, and then set corresponding offense levels for quantities which fall below, between, or above quantities which trigger statutory mandatory minimum penalties. For example, a trafficking offense involving five grams of crack cocaine requires a statutory mandatory minimum sentence of five years imprisonment. See 21 U.S.C. § 841(b)(1)(B). Therefore, the revised guideline applies an offense level of 24 to a quantity of cocaine base ("crack") of at least five grams but less than 20 grams; at criminal history category I, this level produces a range of 51-63 months (encompassing the 60-month mandatory minimum).

The defendants joining in this motion were all sentenced pursuant to USSG § 2D1.1(c)(1)(1995), which, at the time of sentencing, provided for a base offense level of 38 for offenses involving, among other things, 1.5 kilograms or more of cocaine base. Pursuant to the current guideline, USSG §

26

2D1.1(c)(1)(2007) provides for a base offense level of 38 for offenses involving, among other things, 4.5 kilograms or more of cocaine base. The other drug types and quantities set forth in § 2D1.1(c)(1) remain unchanged. *Cf.* USSG § 2D1.1(c)(1)(1995); USSG § 2D1.1(c)(1)(2007). The current base offense level associated with 1.5 kilograms of cocaine base is level 36. *See* USSG § 2D1.1(c)(2)(2007).

18 U.S.C. § Section 3582(c)(2) provides for the retroactive application of guideline amendments in certain cases:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § Section 3582(c)(2).

In Section 1B1.10 of the Guidelines, the Sentencing Commission has identified the amendments which may be applied retroactively pursuant to this authority, and articulated the proper procedure for implementing the amendment in a concluded case.[10]  On December 11, 2007, the Commission

---

[10]Section 1B1.10 is based on 18 U.S.C. § 3582(c)(2). It also implements 28 U.S.C. § 994(u), which provides: "If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of

issued a revised version of Section 1B1.10, which emphasizes the limited nature of relief available under 18 U.S.C. § 3582(c). Revised Section 1B1.10(a), which became effective on March 3, 2008, provides, in relevant part:

> (1) In General.—In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2). As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.
>
> (2) Exclusions.—A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if—
>
>> (A) none of the amendments listed in subsection (c) is applicable to the defendant; or
>>
>> (B) an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range.
>
> (3) Limitation.—Consistent with subsection (b), proceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant.

---

offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." A guideline amendment may be applied retroactively only when expressly listed in Section 1B1.10(c). *Ebbole v. United States*, 8 F.3d 530, 539 (7th Cir. 1993).

On December 11, 2007, the Commission added Amendment 706 to the list of amendments stated in Section 1B1.10(c) which may be applied retroactively, effective March 3, 2008.

### b. The defendants are not eligible for relief pursuant to Amendment 706.

The defendants joining in this motion are not eligible for relief pursuant to Amendment 706 for a variety of reasons, including mandatory minimum sentences, career offender status, and the sheer volume of narcotics at issue in this case.

### i. Terry Clark is subject to a twenty-year mandatory minimum.

As stated above, Terry Clark was sentenced to a term of imprisonment of 240 months (followed by a 60-month consecutive sentence on a firearms charge) after his base offense level was determined to be level 38. R.1381 at 50-51, 56. Since Clark was subject to and received a mandatory minimum of twenty years pursuant to 21 U.S.C. § 851 as a result of a prior narcotics conviction,[11] he is not eligible for a sentence reduction pursuant to Amendment 706.

The Sentencing Commission has not altered and cannot alter a statutory mandatory minimum sentence, and thus the statutory minimum applicable to Clark continues to apply. *United States v. Neal*, 46 F.3d 1405, 1411 (7th Cir.

---

[11]See R.517, Clark PSI at 21.

1995) (en banc) (holding that retroactive amendment "did not (and, in our view, could not) trump the statutory mandatory provisions"), aff'd, 516 U.S. 284 (1996); *see also* § 1B1.10 appl. n. 1(A) (affirming that "a reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c) and is not consistent with this policy statement if . . . an amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of . . . another statutory provision (e.g., a statutory mandatory minimum term of imprisonment.") (emphasis added). Accordingly, as courts have consistently recognized, where a statutory mandatory minimum sentence is applicable, the passage of a retroactive Guidelines amendment does not provide authority to alter that mandatory minimum sentence. *Neal*, 46 F.3d at 1411; *United States v. Torres*, 2004 WL 2038660, at *2 (N.D. Ill. Sept. 7, 2004) (Zagel, J.). Therefore, the motion should be denied as to Terry Clark.

### ii. Tyrone and Andre Williams' guideline ranges would not change.

As discussed above, both Tyrone and Andre Williams were sentenced pursuant to the career offender guideline, USSG § 4B1.1(a). *See* R.1531 at 6, T.Williams PSI at 5-6; A. Williams PSI at 8, 10, A.Williams SOR. If Andre and Tyrone Williams were sentenced pursuant to the current guidelines, Amendment

706 would not lower their guideline range, and therefore both are excluded from relief under the amendment.

USSG § 1B1.10(a)(2)(B) specifically states that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range." If the amendment were applicable to them, both Tyrone and Andre Williams would nonetheless be subject to a guideline range of 360 to life, the same range pursuant to which they were sentenced.

At their respective sentencings, both Andre and Tyrone Williams received sentences of 360 months, the low end of the range of 360 to life applicable to Level 41, Criminal History Category VI. R.1443, 1441. The court found that both Andre and Tyrone Williams' base offense levels were 38 as a result of the attribution of at least 1.5 kilograms of crack cocaine to each. *See* A.Williams PSI at 6; T.Williams PSI at 5-6, R.1531 at 6. Both were career offenders as a result of two prior narcotics convictions, and therefore both had criminal history categories of VI. A.Williams PSI at 6, 8-10; T.Williams PSI at 7-8; USSG § 4B1.1(b).

Had the offense level pertaining to the offense of conviction in this case been 36 pursuant to the amended USSG § 2D1.1(c)(2)(2007), then the base

31

offense level for both Andre and Tyrone Williams would have been 37 by operation of USSG § 4B1.1(b)(A), which provides for an offense level of 37 in cases where the offense statutory maximum is life,[12] unless the offense level pertaining to the offense of conviction is greater. Both received upward adjustments of three points pursuant to USSG § 3B1.1(b)as a result of leadership roles. *See* A.Williams PSI at 6; T. Williams PSI at 5-6. This would increase both of their total offense levels to level 40. Level 40, Criminal History Category VI has a range of 360 to life, the same range set forth in Level 41, Criminal History Category VI.

Therefore, pursuant to USSG § 1B1.10(a)(2)(B), neither Andre nor Tyrone Williams are entitled to relief pursuant to the amendment since their guideline range would remain the same. *See United States v. Hickey*, 280 F.3d 65, 69 (1st Cir. 2002) (reversing grant of § 3582(c)(2) reduction where amendment affected only a specific offense characteristic but defendant was sentenced as a career offender). Section 1B1.10 directs: "the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1).

---

[12]The offense statutory maximum for a violation of 21 U.S.C. § 846 is life imprisonment.

Courts agree that where, as is the case here, application of the pertinent amendment does not result in a different sentencing range, no reduction of sentence may occur. *See*, e.g., *United States v. Hickey*, 280 F.3d 65, 69 (1st Cir. 2002) (reversing grant of § 3582(c)(2) reduction where amendment affected only a specific offense characteristic but defendant was sentenced as a career offender); *United States v. Gonzalez-Balderas*, 105 F.3d 981, 984 (5th Cir. 1997) (although a retroactive amendment reduced the defendant's offense level, the new level (44) still required the sentence of life imprisonment which was imposed, and the district court properly denied the motion summarily*); United States v. Allison*, 63 F.3d 350, 352-54 (5th Cir. 1995) (motion properly denied where the sentence would not be different under new guideline); *United States v. Townsend*, 98 F.3d 510, 513 (9th Cir. 1996) (although a retroactive amendment to the career offender guideline changed the definition of a statutory maximum, the amendment did not benefit the defendant given that the maximum penalty for his offense, bank robbery, was the same under either definition, and thus the guideline range was the same); *United States v. Dorrough*, 84 F.3d 1309, 1311-12 (10th Cir. 1996) (the district court did not abuse its discretion in denying the § 3582(c)(2) motion, where an alternative means of sentencing permitted by the applicable guideline produced the same offense level which applied earlier); *United States v. Armstrong*, 347 F.3d 905,

908 (11th Cir. 2003) (the district court correctly denied the motion, where the defendant's offense level was not altered by the subject of the retroactive amendment); *United States v. Young*, 247 F.3d 1247, 1251-53 (D.C. Cir. 2001) (district court properly denied motion where the sentence was actually based on considerations not affected by the retroactive guideline amendment). This limitation is a straightforward application of the statutory text: Section 3582(c) only applies to defendants who were "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered" by a retroactive amendment. § 3582(c)(2).

> ### iii. The court's previous sentencing findings attribute more than 4.5 grams of crack to each of the defendants.

As stated above, pursuant to USSG § 1B1.10(a)(2)(B), "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range." Pursuant to Amendment 706, USSG § 2D1.1(c)(1)(2007) assigns a base offense level of 38 when 4.5 kilograms or more of crack cocaine can be attributed to a defendant. In making its factual findings in this case, the trial court made it clear that each of these defendants was responsible for much more than 1.5 kilograms of crack cocaine. The court's

34

factual findings for each of these defendants' sentencings supports a base offense level of 38 pursuant to the current guidelines. Therefore, the defendants' applicable guideline ranges would not change and the amendment offers them no relief.

As discussed above, the court repeatedly found that the conspiracy distributed approximately 500 grams of crack cocaine a day. R.1335 at 5; R.1542 at 5; R.1543-2 at 9; R.1508 at 36. The court also repeatedly noted that only three days' worth of participation in the conspiracy was enough to reach the 1.5 kilograms necessary to warrant a base offense level of 38 pursuant to USSG § 2D1.1(c)(1995). R.1335 at 5 ("three days' worth would be one and a half kilograms"); R.1542 at 5 ("to get to the 1.5 kilogram level, which is the maximum under the guidelines, a defendant would only have to be involve or it would only need to be reasonably foreseeable to the defendant that there were three days of crack cocaine dealing our there "); R.1530 at 5 ("I made findings that the quantities were sufficient enough to reach the guidelines maximum very quickly, within a couple of days. This went on for many, many months and years actually."); R.1508 at 35-37 ("all you have to do is have three days worth of involvement in this operation and you've got more than one and a half kilos of crack."); R.1515 at 6 ("it took only a couple of days of this operation to max out on the quantities").

Further, the court found that each of these defendants had participated in the conspiracy for much more than the three days necessary to trigger the 1.5 kilograms of crack cocaine necessary to warrant a level 38 pursuant to USSG § 2D1.1(c)(1)(1995) and for much more than the nine days that would be necessary to trigger the 4.5 kilograms of crack cocaine necessary to warrant a level 38 pursuant to the amended guideline, USSG § 2D1.1(c)(1)(2007). Even Durwin Baker, to whom the court attributed the short period of participation of all the defendants, from December 1991 to February 1992, well exceeded the nine day period necessary to attribute 4.5 kilograms of crack cocaine to him. *See* GVO at 35.

Moreover, the heroin and powder cocaine sold by the conspiracy was not taken into account in the initial guidelines calculations, though in every instance except one[13], the court adopted the factual findings in the defendants' presentence investigation reports, each of which noted (in essence but not necessarily verbatim) that the conspiracy sold more than 150 kilograms of

---

[13]Edgar Williams' SOR does not indicate whether the court adopted the factual findings and guideline applications set forth in the presentence investigation report. However, during Edgar's sentencing, the court stated, "I've ruled on that with other defendants, and those rulings will stand. The quantity rulings will stand. The gun rulings will stand . . .it took only a couple of days of this operation to max out on the quantities." R.1515 at 3,6. Given the court's statement that it would not disturb the rulings made in the codefendants' sentencings, the government therefore believes that the failure to check the appropriate box on the SOR was a clerical error.

powder cocaine, 1.5 kilograms of cocaine base and large quantities of heroin. *See* Baker PSI at 12, Clark PSI at 10, Conner PSI at 9, Foster PSI at 7,Hubbard PSI at 6, Andrew Patterson PSI at 6, Andrew L. Patterson PSI at 6, Henry Patterson PSI at 6, Jerry Patterson PSI at 6, Lennell Patterson PSI at 9, Sumrell PSI at 6, Andre Williams PSI at 2, Tyrone Williams PSI at 2. Given the huge amount of crack cocaine attributable to the defendants and the crack cocaine guidelines in effect at the time of sentencing, it is understandable that these additional narcotics were not taken into account during the original sentencings. However, even if the court's original factual findings did not support a finding of at least 4.5 kilograms of crack cocaine and therefore a base offense level of 38 under the current guidelines, then the additional of the powder cocaine and heroin into the guidelines calculations surely would indicate a base offense level of at least 38. In fact, for all but five of the defendants (Baker, Foster, Hubbard, Andre Williams and Tyrone Williams, who were found to have been in the conspiracy for less than three years), the 150 kilograms of powder cocaine noted in the defendants' PSI and adopted as a factual finding by the court would in and of itself be sufficient to trigger a base offense level of 38 independent of any crack cocaine. under the original guidelines or under the amended guidelines. *Cf.* USSG § 2D1.1(c)(1)(1995), USSG § 2D1.1(c)(1)(2007).

The defendants' motions should therefore be denied, based on the court's original factual findings on the nature and quantity of narcotics attributable to each of the defendants.

### c.   Any resentencing should be limited to the reduction provided in Amendment 706.

Several of the defendants, in conjunction with their motion for relief pursuant to Amendment 706, seek to revisit other sentencing issues. Specifically, Tyrone Williams asks the court to revisit the calculation of his criminal history category and his status as a career offender; Edgar Williams asks the court to resolve a dispute involving the Bureau of Prisons' determination of credit for time served; Andre Williams asks the court to reconsider guidelines issues concerning enhancements for the use of firearms and for his role in the offense; and Foster seeks to relitigate his criminal history category. These defendants may not use Section 3582(c)(2) in the context of this motion to relitigate sentencing issues unrelated to Amendment 706.

The Sentencing Reform Act generally prohibits modifying a final term of imprisonment, except for the limited circumstances that are specifically authorized by statute. *United States v. Smith*, 438 F.3d 796, 799 (7th Cir. 2006) (quoting § 3582(c): "The court may not modify a term of imprisonment" except for few exceptions). The interest in finality of criminal sentences is significant. *See Teague v. Lane*, 489 U.S. 288, 308-10 (1989) ("Without finality, the criminal law is deprived of much of its deterrent effect."). A federal criminal sentence is generally final following a direct appeal, and modification is permitted by law

39

only in very circumscribed situations. Thus, the power afforded in Section 3582(c)(2) is limited, and that limit must be respected. *Cf. Braxton v. United States*, 500 U.S. 344, 348 (1991) ("In addition to the *duty* to review and revise the Guidelines, Congress has granted the Commission the unusual explicit *power* to decide whether and to what extent its amendments reducing sentences will be given retroactive effect, 28 U.S.C. § 994(u). This power has been implemented in Section 1B1.10, which sets forth the amendments that justify sentence reduction.") (emphasis in original).

Section 3582(c)(2) permits a sentencing court to reduce a defendant's sentence only when "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." In its recently revised policy statements, the Sentencing Commission made clear that proceedings under Section 1B1.10 and Section 3582(c)(2) "do not constitute a full resentencing of the defendant." Furthermore, in Section 1B1.10(b)(1), the policy statement explicitly directs that "[i]n determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is warranted, the court . . . shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and *shall leave all other*

*guideline application decisions unaffected*" (emphasis added).  The limitation imposed by the Sentencing Commission must be respected.

Indeed, in the context of affirming a § 3582(c)(2) re-sentencing without the appointment of counsel or even the defendant's presence, the Seventh Circuit held that "a proceeding under 18 U.S.C. § 3582(c) is *not a do-over* of an original sentencing proceeding where a defendant is cloaked in rights mandated by statutory law and the Constitution."  *United States v. Tidwell*, 178 F.3d 946, 949 (7th Cir. 1999) (emphasis added).  Similarly, the Eleventh Circuit has held that Section 3582(c)(2) "do[es] not contemplate a full *de novo* resentencing" and "*all* original sentencing determinations remain unchanged with the sole exception of the guideline range that has been amended since the original sentencing." *United States v. Bravo*, 203 F.3d 778, 781 (11th Cir. 2000) (emphasis in original) (quoting *United States v. Cothran*, 106 F.3d 1560, 1562 (11th Cir. 1997)).[14] Accordingly, any re-sentencing under Section 3582(c)(2) is limited to consideration of the crack amendment, and not the other contentions raised by the defendants.

---

[14]*See also United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("A [Section] 3582(c)(2) motion is not a second opportunity to present mitigating factors to the sentencing judge, nor is it a challenge to the appropriateness of the original sentence.").

Courts have consistently rejected attempts by defendants to raise issues other than the reduction provided for by the particular retroactive amendment. In *United States v. Smith*, 241 F.3d 546, 548 (7th Cir. 2001), the Seventh Circuit held that the defendant could not raise *Apprendi* to further reduce his sentence, which the district court had reduced pursuant to a retroactive amendment. The Seventh Circuit labeled that claim to be "a new issue, one not authorized by § 3582(c), for it is unrelated to any change in the Sentencing Guidelines." *Id.*; *see also United States v. Lloyd*, 398 F.3d 978, 979-80 (7th Cir. 2005) (claims that district judge miscalculated relevant conduct, and that the CCE statute was improperly applied, could only be brought under Section 2255).[15] Thus, the defendants cannot raise other contentions in support of a sentence reduction

---

[15]*See also United States v. Jordan*, 162 F.3d 1 (1st Cir. 1998) (when reducing a sentence based on a retroactive amendment, the court does not have authority to grant a departure on any other ground, including Section 5K2.0); *Cortorreal v. United States*, 486 F.3d 742, 744 (2d Cir. 2007) (Section 3582(c)(2) motion may not be employed to present claim under *Booker*); *United States v. McBride*, 283 F.3d 612, 615 (3d Cir. 2002) (cannot raise *Apprendi* claim for further reduction under Section 3582(c)(2)); *United States v. Carter*, 500 F.3d 486, 490-91 (6th Cir. 2007) (Section 3582(c)(2) motion may only be presented based on a guideline amendment, as the basis of the motion is distinct from other claims which might affect the sentence, which must be presented, if at all, under Section 2255); United States v. Price, 438 F.3d 1005, 1007 (10th Cir. 2006) (Section 3582(c)(2) motion may not be employed to present claim under Booker); United States v. Bravo, 203 F.3d 778, 782 (11th Cir. 2000) (district court was correct to deny Eighth Amendment claim; "Section 3582(c), under which this sentencing hearing was held, does not grant to the court jurisdiction to consider extraneous resentencing issues such as this one. Bravo must instead bring such a collateral attack on his sentence under 28 U.S.C. § 2255."); United States v. Moreno, 421 F.3d 1217, 1220 (11th Cir. 2005) (Section 3582(c)(2) motion may not be employed to present claim under Booker)

beyond the 2-level decrease provided for by the crack amendment. Therefore, the efforts of Tyrone Williams, Edgar Williams, Andre Williams and Maurice Foster to litigate or relitigate other sentencing issues should be denied.

### d. The court has the discretion to not reduce the defendants' sentences.

Even in circumstances where a defendant may qualify for a reduction in sentence pursuant to Amendment 706, the reduction is not automatic. Pursuant to Section 3582(c)(2) and the applicable policy statements of the Commission, the court has the discretion not to reduce the sentence of a defendant who may appear to be eligible for a reduction. In the event that the court disagrees with the government's position that the factual findings made during the defendants' sentencings would preclude relief under Section 706, the government asks that the court exercise its discretion by not reducing the defendants' sentences because of the vast scope of the narcotics conspiracy at issue in this case.

Section 3582(c)(2) provides that "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Thus, even when the guideline range is actually reduced, whether to reduce the sentence "is a matter . . . which lies within the peculiar discretion of the district court." *United States v. Tidwell*, 17 F.3d 946, 949 (7th Cir. 1999); *see also United States v. Vautier*, 144

44

F.3d 756, 760 (11th Cir. 1998) ("[t]he grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary").[16]

Subject to the limits set forth in Section 1B1.10(b), to be discussed below, the Court may consider all pertinent information in applying the Section 3553(a) factors and determining whether and by how much to reduce the defendant's sentence. In particular, the Court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. Revised application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Revised application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." The application note explains that these factors are relevant in determining whether

---

[16]Similarly, Section 1B1.10 directs that "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted. *Id.* appl. n. 1(B)(I); *see also* U.S.S.G. § 1B1.10 background cmt. ("The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right."). All courts are in accord on this point. *United States v. Whitebird*, 55 F.3d 1007, 1010 (5th Cir. 1995) (district court permissibly declined to reduce sentence); *United States v. Ursery*, 109 F.3d 1129, 1137 (6th Cir. 1997); *United States v. Coohey*, 11 F.3d 97, 101 (8th Cir. 1993); *United States v. Wales*, 977 F.2d 1323, 1327-28 (9th Cir. 1992); *United States v. Mueller*, 27 F.3d 494, 497 n.5 (10th Cir. 1994).

and by how much to reduce a sentence, but only within the limits set forth in Section 1B1.10(b).

As the court may recall, this case involved a 24-hour narcotics market that operated in and around the 2700 block of W. Flournoy for a period of approximately four years. GVO at 1. The operation was controlled by the Travelling Vice Lords street gang who conducted sales of crack cocaine, powder cocaine and heroin on a 24-hour-a-day basis. *Id.* In order to continue the operation undisturbed by the police, the defendants bribed the police with firearms, crack cocaine and heroin. *Id.* The court has estimated that the operation sold "as much as 500 grams a day . . . the average, the average bag of the exhibits of drug -- of the crack exhibits was .21 grams, and there were 40 packs a day. There were 60 bags in a pack. That's 2400 bags a day times .21 is 504 grams a day. . . This was a large operation catering to a large number of people selling huge quantities of drugs." R.1335 at 5-7. As noted above, eight of the fourteen defendants joining in this motion were convicted of firearms offenses in connection with their participation in the conspiracy. Clearly, the narcotics sales, gang activity and firearms activity of this organization must have held a complete stranglehold on the neighborhood of 2700 W. Flournoy. These facts alone demonstrate the danger to the community presented by these

defendants and would fully justify any decision not to reduce the defendants's sentences.

### e.    Any reduction must be strictly limited to the two levels provided for in Amendment 706.

If the court decides to reduce the sentences of these defendants, the extent of the reduction is strictly limited to the two levels provided for in Amendment 706. Congress delegated to the Sentencing Commission the authority to determine to what extent a sentence may be reduced. *See* 18 U.S.C. § 3582(c)(2); 28 U.S.C. § 994(u). The Commission, in turn, directed in Section 1B1.10(b) that, with one exception (where the defendant earlier received a below-guideline sentence, "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1)." U.S.S.G. § 1B1.10(b)(2)(A). An application note adds: "Under subsection (b)(2), the amended guideline range determined under subsection (b)(1) and the term of imprisonment already served by the defendant limit the extent to which the court may reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement. Specifically, if the original term of imprisonment imposed was within the guideline range applicable to the defendant at the time of sentencing, the court shall not reduce the defendant's

term of imprisonment to a term that is less than the minimum term of imprisonment provided by the amended guideline range determined under subsection (b)(1)." U.S.S.G. § 1B1.10 app. note 3.[17] Thus, the Court may not reduce the sentence below the range provided by the amended guideline, and "in no case . . . shall the term of imprisonment be reduced below time served." U.S.S.G. § 1B1.10 app. note 3.

### f. *Booker* does not apply to resentencings pursuant to Section 3582.

Baker contends that, consistent with the Ninth Circuit position in *United States v. Hicks*, 472 F.3d 1167(9th Cir. 2007), in addition to considering where within the revised guideline range he should be sentenced, this Court should conduct a full resentencing, and reexamine the entire sentence consistent with the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which made the Sentencing Guidelines advisory. That position is incorrect; the defendant's claim that *Booker* applies in this proceeding and permits a reduction

---

[17] Application note 3 provides an example of this rule:

For example, in a case in which: (1) the guideline range applicable to the defendant at the time of sentencing was 41 to 51 months; (2) the original term of imprisonment imposed was 41 months; and (3) the amended guideline range determined under subsection (b)(1) is 30 to 37 months, the court shall not reduce the defendant's term of imprisonment to a term less than 30 months.

in sentence beyond the limits set by Congress and the Sentencing Commission is without merit.

Section 3582(c)(2) allows a court to reduce a sentence based on a retroactive guideline amendment *only* as authorized by the Sentencing Commission, and the Commission has limited the extent of such a reduction to the application of the amended guideline range or a reduction comparable to the extent of a previously granted reduction below the earlier guideline range.

### i. Section 3582(c)(2) limits sentencing reductions based on retroactive guidelines to those authorized by the Sentencing Commission.

In 18 U.S.C. § 3582(c)(2), Congress created a "narrow exception to the rule that final judgments are not to be modified." *United States v. Armstrong*, 347 F.3d 905, 909 (11th Cir. 2003). Section 3582(c)(2) permits a sentencing reduction based on a retroactive guideline only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." In the Sentencing Reform Act, Congress specifically delegated to the Sentencing Commission the authority to determine when, and to what extent, a sentencing reduction is allowed. Under 28 U.S.C. § 994(u), when the Commission amends the guidelines, the Commission "shall specify in what circumstances and by what amounts the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u). As the Supreme Court has

49

explained, under this provision, "Congress has granted the Commission the unusual and explicit power to decide whether and to what extent its amendments reducing sentences will be given retroactive effect." *Braxton v. United States*, 500 U.S. 344, 348 (1991) (citing § 994(u); emphasis omitted).

Thus, under the express statutory language of Section 3582(c)(2) and Section 994(u), the Commission's policy statements that implement the statute's authorization of retroactive sentence reductions are binding, just as the statutory restrictions on reductions below a mandatory minimum are binding. *See United States v. Walsh*, 26 F.3d 75, 77 (8th Cir. 1994) ("Congress has made the policy statements set forth in Section 1B1.10 the applicable law for determining whether a district court has the authority to reduce a sentence in this situation.").

## ii. The statute and policy statements prohibit a reduction below the floor set by the Sentencing Commission.

As explained above, Section 3582(c)(2) does not provide for full resentencing of defendants. In its recent revision to the policy statement governing sentencing reductions under Section 3582(c)(2), the Sentencing Commission made clear that proceedings under the statute "do not constitute a full resentencing of the defendant." U.S.S.G. § 1B1.10(a)(3); *see United States v. Tidwell*, 178 F.3d 946, 949 (7th Cir. 1999) ("not a do-over of the original

50

sentencing"); *United States v. Bravo*, 203 F.3d 778, 781 (11th Cir.) (Section 3582(c)(2) "do[es] not contemplate a full de novo resentencing") (quotation and citation omitted); *see also United States v. McBride*, 283 F.3d 612, 615 (3d Cir. 2002); *United States v. Jordan*, 162 F.3d 1, 4 (1st Cir. 1998); *United States v. Torres*, 99 F.3d 360, 361 (10th Cir. 1996).

Rather than authorizing a full reexamination of a defendant's sentence, the Sentencing Commission has placed explicit limits on the extent of a sentencing reduction permissible under Section 3582(c)(2). Section 1B1.10(b)(1) directs that "[i]n determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is warranted, the court . . . shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1).

Section 1B1.10(b)(2) sets out specific limits on the extent of sentencing reductions, providing that, with one exception, "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1)." U.S.S.G. § 1B1.10(b)(2)(A). The sole exception is set forth in Section 1B1.10(b)(2)(B), which provides that if the

defendant's "original term of imprisonment was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing, a reduction comparably less than the amended guideline range determined under subdivision (1) may be appropriate." U.S.S.G. § 1B1.10(b)(2)(B); *see id.*, appl. n. 3 (if defendant's original sentence was a downward departure of 20% below guideline range, reduction to term that is 20% below amended guideline range would be a "comparable reduction").

Thus, the Commission, consistent with the authorization provided by Congress, has set a floor below which a reduced sentence may not fall. In short, 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10 are narrow provisions which permit a limited reduction of sentence, while prohibiting a complete reevaluation of the sentence. *See, e.g., United States v. Hasan*, 245 F.3d 682, 685-86 (8th Cir. 2001) (en banc) (reduction below the amended guideline range is not permitted); *Bravo*, 203 F.3d at 781 (court was not permitted to "depart downward . . . to an extent greater than that authorized under Section 3582(c) based on the amended guideline provision").

### iii. Booker did not affect the limits on sentencing reductions under Section 3582(c)(2).

In *United States v. Booker*, 543 U.S. 220 (2005), the Court held that the Sixth Amendment, as construed by the Court in *Apprendi v. New Jersey*, 530

U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), applied to the federal Sentencing Guidelines, under which the sentencing court rather than the jury found facts that established the mandatory guidelines range. *Booker*, 543 U.S. at 230-45. The Court remedied that constitutional defect by severing the statutory provisions that made the guidelines range mandatory, resulting in a regime in which the Guidelines are advisory, and courts are to consider the guidelines and the other factors in 18 U.S.C. § 3553(a) in selecting an appropriate sentence. *Id.* at 245-68; *see Gall v. United States*, 128 S. Ct. 586, 594 (2007).

Nothing in *Booker* expands the scope of sentencing reductions under Section 3582(c)(2).[18] As an initial matter, even before *Booker*, the reduced Guidelines did not set a "maximum," as that term is understood for Sixth Amendment purposes, for Section 3582(c) proceedings. Judges were never *required* to reduce a sentence. Rather, Section 3582(c)(2) states that a court "may" reduce the term of imprisonment. Nor, if courts did so, were they required to reduce a sentence to the full extent permitted by the retroactive guideline amendment. Instead, judges were to "consider[] the factors set forth in Section

---

[18]Any argument that *Kimbrough v. United States*, 128 S. Ct. 558 (2007) is a separate basis to reduce the sentence below what § 3582(c)(2) and the Sentencing Commission authorize is meritless: *Kimbrough* itself is premised on *Booker*, and thus all of the reasons why *Booker* does not apply to § 3582 motions also prevent *Kimbrough*'s application to those motions.

3553(a) to the extent that they are applicable" and reduce the sentence "if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. 3582(c)(2). Thus, the Section 3553(a) factors were *always* the guiding principle under Section 3582(c)(2), with the limitation that a reduction must accord with the Commission's policy statements, including that the reduction equate to no more than if the amendment "had . . . been in effect" at the time the defendant was sentenced. *See* USSG § 1B1.10(b) (pre-3/3/08); USSG § 1B1.10(b)(1) (eff. 3/3/08).

*Booker* had no direct effect on Section 3582(c)(2). *Booker*'s constitutional holding applied the now-familiar rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Booker*, 543 U.S. at 231 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). That rule has no application to proceedings under Section 3582(c)(2), which can only decrease – not increase – the defendant's sentence.[19] Moreover, the limits Section 3582(c)(2) and U.S.S.G. § 1B1.10 impose on the extent of reductions are, at most, the equivalent of mandatory minimum

---

[19]This crucial distinction was recognized by the district court in *United States v. Witherspoon*, No. 02 CR 491 (N.D. Ill. April 28, 2008) (order attached), which held that *Booker* does not apply to § 3582(c) motions. *Witherspoon*'s reasoning was adopted in full by *United States v. Thomas*, – F. Supp.2d –, No. 04 CR 889 (N.D. Ill. July 17, 2008) (opinion attached).

sentences, which the Sixth Amendment permits within an otherwise-authorized sentencing range. *See Harris v. United States*, 536 U.S. 545 (2002).

*Booker*'s remedial holding is likewise inapplicable. *Booker* applies to full sentencing hearings – whether in an initial sentencing or in a resentencing where the original sentence is vacated for error. The Court excised and severed the provision that made the Guidelines mandatory in those sentencings, 18 U.S.C. § 3553(b). It also excised the related provision on appellate review, 18 U.S.C. § 3742(e). "With these two sections excised (and statutory cross-references to the two sections consequently invalidated)," the Court held, "the remainder of the Act satisfies the Court's constitutional requirements." 543 U.S. at 259. Section 3582(c)(2) contains no cross-reference to Section 3553(b) and therefore was not excised by *Booker*. Nor is there anything else in *Booker* that directly addresses Section 3582 proceedings.

The Court in *Booker* applied its advisory guidelines remedy to cases in which no Sixth Amendment violation existed, concluding that Congress would not have wanted the Guidelines to be mandatory in some contexts and advisory in others. 543 U.S. at 266. The Court rested its conclusion on two observations, neither of which is applicable to reduction proceedings under Section 3582(c)(2). The first was that Congress would not have wanted to "impose mandatory . . . . limits on a judge's ability to *reduce* sentences," but not to "impose those limits

55

upon a judge's ability to *increase* sentences." *Id.* (emphasis in original); *see id.* (Congress would not have wanted such "one-way lever[s]"). But Congress clearly intended Section 3582(c)(2) to be a "one-way lever" – it gives the district court the option to leave a defendant's sentence alone or to reduce it, but does not permit the court to increase the sentence. Second, the Court observed that rendering the Guidelines partially advisory and partially mandatory in federal sentencings would engender significant "administrative complexities." *Id.* Given the limited scope of a proceeding under Section 3582(c)(2), none of the significant "administrative complexities" is present that led the Supreme Court to require all guideline provisions to be advisory at full sentencing proceedings. *Booker*, 543 U.S. at 266. To the contrary, holding that *Booker* requires full resentencings whenever a guideline is made retroactive — in many cases years after the original sentencing — would create major administrative complexities and would vastly expand the intended scope of a sentencing reduction under Section 3582(c)(2). The remedial opinion of *Booker* sought to effectuate Congress's intent, and Congress would not have intended the results sought by the defendant.

Section 3582(c)(2)'s direction that the court "shall consider the factors in section 3553(a) to the extent that they are applicable" also does not aid the defendants in this case. Although one of the factors in Section 3553(a) is the

56

Guidelines range, and *Booker* made that range advisory, the still-valid statutory language in Section 3582(c)(2) requires courts to consider the Section 3553(a) factors (including the Guidelines) when determining whether and by how much to reduce the sentence, "consistent with applicable policy statements issued by the Sentencing Commission." The Commission has made clear that courts are to consider the Section 3553(a) factors in determining whether a reduction is warranted and "the extent of such reduction, but only *within the limits*" of Section 1B1.10. U.S.S.G. § 1B1.10, appl. n. 1(B)(i) (emphasis added).

In *United States v. Hicks*, 472 F.3d 1167 (9th Cir. 2007), the Ninth Circuit concluded that limiting the extent of a Section 3582(c)(2) sentencing reduction to that prescribed by the Sentencing Commission amounts to a mandatory application of the Sentencing Guidelines that is prohibited by *Booker*. For the reasons stated above, *Hicks*' analysis is flawed and should not be followed by this Court.[20] *Hicks* fails to consider that the context of a Section 3582(c)(2) proceeding, in which a court may only reduce a sentence or leave it undisturbed, is markedly different from the determinations under mandatory Guidelines which could increase a defendant's sentence – and thus run afoul of the Sixth Amendment – that were addressed in *Booker*. *Hicks* also fails to recognize that

---

[20]*Hicks* was found to be persuasive in *United States v. Shelby*, USDC No. 95 CR 0069 (N.D. Ill. June 30, 2008) (order attached as Exhibit B). For the reasons stated in the text, this Court should reject the holding of *Hicks*.

a sentencing reduction under Section 3582(c)(2) is not a full resentencing proceeding, but a limited mechanism only for reducing a sentence to account for a retroactive guideline amendment. Likewise, *Hicks* ignores the fact that Section 3582(c)(2) incorporates into the statute the limits in Section 1B1.10, and that those statutory limits are binding on sentencing courts.

The conclusion that *Booker* does not apply in proceedings under Section 3582(c)(2) is consistent with the courts of appeals' unanimous holding that defendants whose convictions are final have no right to resentencing under *Booker* on collateral review under 28 U.S.C. § 2255. *See McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005).[21] It would be incongruous if courts interpreted the congressional scheme in Section 3582(c)(2), which provides for much more limited relief than Section 2255, provides only for sentence reductions, and raises no Sixth Amendment concerns, as triggering a full *Booker* resentencing.

---

[21]*See Cirilo-Muñoz v. United States*, 404 F.3d 527, 532-33 (1st Cir. 2005); *Guzman v. United States*, 404 F.3d 139, 141-44 (2d Cir. 2005); *Lloyd v. United States*, 407 F.3d 608, 613-16 (2005); *United States v. Morris*, 429 F.3d 65, 66-67 (4th Cir. 2005); *United States v. Gentry*, 432 F.3d 600, 602-05 (5th Cir. 2005); *Humphress v. United States*, 398 F.3d 855, 860-63 (6th Cir. 2005); *Never Misses A Shot v. United States*, 413 F.3d 781, 783-84 (8th Cir. 2005); *United States v. Cruz*, 423 F.3d 1119, 1121 (9th Cir. 2005); *United States v. Bellamy*, 411 F.3d 1182, 1188 (10th Cir. 2005); *Varela v. United States*, 400 F.3d 864, 867-68 (11th Cir. 2005); *In re Fashina*, 486 F.3d 1300, 1306 (D.C. Cir. 2007).

Indeed, given that *Booker* does not apply to the many defendants, including the defendants currently before this court, whose sentences were final when *Booker* was decided, it would be unfair to apply *Booker* to that subset of those defendants whose sentences are being lowered under Amendment 706. Section 3582(c)(2) was designed only to permit courts to reduce defendants' sentences to account for a retroactive guideline amendment. To grant these defendants a further reduction that is not afforded to all other similarly situated defendants would produce the unwarranted sentencing disparities Congress sought to eliminate in the Sentencing Reform Act. It would also entail enormous additional cost and effort in resentencing tens of thousands of inmates, even though Section 3582(c)(2) by its terms does not authorize a full resentencing.

Accordingly, while this Court should consider the Section 3553(a) factors in determining whether and to what extent to reduce the sentence, it must abide by the limitations on sentencing reductions directed by Congress. *Booker* does not apply, and there is no authorization for this Court to revisit its earlier sentencing determinations.

Should this Court disagree and conclude that *Booker* is applicable, it should exercise its discretion not to vary below the amended guideline range. The Sentencing Commission's determinations, which always must be considered in sentencing, *see* 18 U.S.C. § 3553(a), deserve particular respect in this context,

59

where Congress specifically delegated to the Commission the authority to amend the Guidelines, and to "specify in what circumstances and by what amounts the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u). It is appropriate to abide by these restrictions, given that the Commission has properly determined that Section 3582(c)(2)'s exception to the general rule of finality in criminal litigation should extend only to application of the newly amended guideline, not to relitigation of other aspects of the sentence. *See* U.S.S.G. § 1B1.10(a)(3) (proceedings under Section 3582(c)(2) "do not constitute a full resentencing of the defendant"). Adherence to the limits imposed by the Commission will also avoid disparity in sentencing among similarly situated defendants. *See* 18 U.S.C. § 3553(a)(6). And it will avoid substantial unfairness to countless defendants who may not gain reconsideration of their final sentences because they did not enjoy the fortuity of having a retroactive guideline amendment applied to one aspect of their sentences.

> **g.** **This court may not reduce Baker's sentence below the amended guideline level as a result of his health issues , his role in the offense or his cooperation.**

In addition to a reduction in sentence based on Amendment 706, Durwin Baker seeks further leniency based on his heart condition, his alleged minimal

role in the offense, and his cooperation. First, Baker has already received a reduction in his offense level as a result of minor participation, R. 1505-2 at 7, and is not entitled to a second reduction on that basis. Concerning the other issues, while the court may consider this information in determining whether and by how much to reduce the defendant's sentence, the court is barred from reducing the sentence, for any reason, below the bottom of the revised guideline range. Just as *Booker* is inapplicable, and does not allow a sentencing reduction below the limit set by Congress and the Sentencing Commission, a court may not depart or otherwise reduce a sentence below the statutory limits based on the facts put forward by Baker.

As stated throughout this memorandum, the Court's power to reduce a sentence based on a retroactive guideline amendment is strictly limited. "[A] motion to modify an otherwise final judgment pursuant to § 3582(c)(2) is a limited and narrow exception to the rule that final judgments are not to be modified . . . ." *United States v. Armstrong*, 347 F.3d 905, 908-09 (11th Cir. 2003). Congress has delegated to the Sentencing Commission the authority to determine when and to what extent a sentenced prisoner's term of incarceration may be reduced based on a change in the Sentencing Guidelines. The Commission, in turn, has authorized the retroactive application of only a handful of the hundreds of guideline amendments adopted since 1987, and clearly

61

articulated the extent of permissible reductions. Specifically, the Commission has directed that "[i]n determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced. In making such a determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1).

The Commission further directed that "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1)." U.S.S.G. § 1B1.10(b)(2). As it explains in the Commentary, "[u]nder subsection (b)(2), the amended guideline range determined under subsection (b)(1) and the term of imprisonment already served by the defendant limit the extent to which an eligible defendant's sentence may be reduced under 18 U.S.C. § 3582(c)(2)." U.S.S.G. § 1B1.10 app. note 3. Thus, the Commission, consistent with the authorization provided by Congress, has set

a floor below which a reduced sentence may not fall. In short, Sections 3582(c)(2) and 1B1.10 are narrow provisions which permit a limited reduction of sentence, and do not allow a complete reexamination of the sentence, nor afford a windfall to the limited number of defendants to whom the opportunity for reduction of sentence is afforded.

Agreeing with this analysis, the *en banc* court in *United States v. Hasan*, 245 F.3d 682 (8th Cir. 2001), held that the district court erred in a Section 3582(c)(2) proceeding by affording an eight-level reduction based on post-sentencing rehabilitation, concluding that the "downward departure below the new Guidelines range on the basis of post-sentencing rehabilitation was not authorized by the terms of either the statute or the Guidelines." Id. at 685. The court explained:

> The language of the statute, 18 U.S.C. § 3582(c)(2), is clear. The factors set forth in § 3553(a) and the applicable policy statements are to be considered only when making the decision whether to reduce a term of imprisonment as a result of the Sentencing Commission's lowering of the sentencing range. The statute does not say that the court may reduce the term of imprisonment below the amended sentencing range or that the § 3553(a) factors or the applicable policy statements should be considered for such an additional reduction.

*Id.* at 686. The court further observed the limitations imposed by the Sentencing Commission, which preclude a sentencing reduction below the amended

guideline range (or below the range which takes into account a downward departure comparable to that afforded at the first hearing). *Id.*

> It goes without saying that Ms. Hasan did not and could not have received a downward departure at her original sentencing for *post-sentencing* in-prison good conduct. The departure granted by the district court to Ms. Hasan at her resentencing is not consistent with the applicable policy statement (§ 1B1.10) issued by the Sentencing Commission to govern § 3582(c)(2) resentencings, and therefore runs afoul of § 3582(c)(2) itself which requires action "consistent with applicable policy statements issued by the Sentencing Commission."

Id. (emphasis in original). All other courts to address the issue are in agreement that post-sentencing conduct or other circumstances may not be considered at a Section 3582(c)(2) proceeding as a basis for reducing a sentence below an amended guideline range. *See, e.g., United States v. Rodriguez-Pena*, 470 F.3d 431, 433 (1st Cir. 2006); *United States v. Bravo*, 203 F.3d 778, 781 (11th Cir. 2000) (rejecting further departure based on defendant's current ill health, stating: "A district court's discretion has, therefore, clearly been cabined in the context of a Section 3582(c) sentencing reconsideration. In light of this limit, we find that the district court was correct in holding that it lacked jurisdiction to depart downward because of Bravo's medical condition to an extent greater than that authorized under Section 3582(c) based on the amended guideline provision."). *See also Quesada Mosquera v. United States*, 243 F.3d 685, 686 (2d

Cir. 2001) (per curiam) (affirming denial of Section 3582(c)(2) motion which was based on rehabilitation alone).

For all of these reasons, Baker's request for reduction of his sentence below the amended guideline range should be denied.

## CONCLUSION

WHEREFORE, the government respectfully requests that the defendants' Section 3582 motions be denied, or in the alternative, that any reduction be limited to the two levels contemplated in Amendment 706.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:    /s/ Madeleine S. Murphy
       MADELEINE S. MURPHY
       Assistant United States Attorney
       219 S. Dearborn Street
       Chicago, Illinois   60604
       (312) 886-2070

# EXHIBIT A

| Defendant | Narcotics Sentence | Firearms Sentence | Offense Level | Crim. History |
|---|---|---|---|---|
| Baker, Durwin+ | 195 | 60*** | 35 | II |
| Clark, Terry* | 240 | 60*** | 38 | III |
| Conner, Willie | 235 | 60*** | 38 | I |
| Foster, Maurice | 360 | | 40 | IV |
| Hubbard, Gregory+ | 295 | 60*** | 38 | I |
| Patterson, Andrew+ | life | 120*** 120**** | 42 | II |
| Patterson, Andrew L. | 310 | | 40 | I |
| Patterson, Henry+ | 340 | 60*** | 41 | I |
| Patterson, Jerry+ | 240 | 60*** | 38 | I |
| Patterson, Lennell+ | 210 | | 37 | I |
| Sumrell, Odell+ | 360 | | 40 | III |
| **Williams, Andre+ | 360 | 120*** 120**** | 41 | VI |
| Williams, Edgar+ | 235 | | 38 | I |
| **Williams, Tyrone | 360 | | 41 | VI |

| + | Convicted on both Counts 1 and 2 |
|---|---|
| * | Subject to 20 year mandatory minimum |
| ** | Career Offender |
| *** | Consecutive firearms sentence |
| **** | Concurrent firearms sentence |

68

# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 95 CR 69 |
| | ) | |
| GREGORY SHELBY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

On December 12, 1995, Gregory Shelby pled guilty to both counts of a superceding indictment without a plea agreement. Count One charged Shelby with knowingly and intentionally possessing with an intent to distribute approximately 497 grams of mixtures containing cocaine and approximately 120 grams of mixtures containing cocaine base (crack cocaine). Count Two charged Shelby with carrying and using a firearm during and in relation to the commission of a drug trafficking crime. Both crimes were charged as having been committed on or about January 14, 1993, a date when Shelby was 23 years old. Count One carried a minimum mandatory sentence of 10 years and Count Two carried a mandatory term of 5 years consecutive to any other sentences imposed.

The Presentence Investigation Report reflected Guideline calculations based on a total offense level of 32 and a criminal history category of I; the Guideline range for Count One was 121 to 151 months with Count Two at 60 months.  At the sentencing hearing, the Court increased Shelby's total offense level to 38 based upon additional drug quantities constituting relevant conduct.  The reconfigured Guideline range for Count One was 235 to 293 months' imprisonment to be followed by Count Two's mandatory sentence of 60 months.  The court sentenced Shelby to 235 months on Count One and 60 months on Count Two, for a total period of incarceration of 295 months—approximately 24 ½ years.

At the time his sentence was imposed on March 7, 1996, Shelby was 26 years old.  He has now been imprisoned for approximately 13 years.  His conviction and sentence were affirmed in *United States v. Shelby*, 121 F.3d 1118, 1122 (7 Cir. 1997).  Shelby is back before this Court on two motions, one filed by the government and one filed on Shelby's behalf by his counsel.  The government's Rule 35 Motion for Reduction of Sentence is based on Shelby's rendering of substantial assistance to the government in its investigation and prosecution of a number of other individuals about whom Shelby had knowledge.  Shelby's motion is based on the premise that Amendment 706 to the federal Sentencing Guidelines, made retroactive by Amendment

711 and affecting the crack cocaine Guideline, reduces the base offense level in this case.

At the time of Shelby's sentencing, the Sentencing Guidelines were mandatory and the 100-to-1 powder cocaine to crack cocaine sentencing disparity was embedded within them. The crack/powder disparity was a product of Congress's establishment of minimum mandatory sentences that were set purely on the weight and type of drugs involved. Contrary to pre-Guideline sentencing practices, which required sentencing judges to consider and evaluate a number of criteria before imposing a sentence, the Sentencing Commission adopted a drug-weight-driven scheme using the minimum mandatory incarceration provisions set by Congress as a point of departure. With punishment increasing in lockstep with the weight and type of drugs involved, the comprehensive sentencing considerations of 18 U.S.C.§ 3553(a), some of which are favorable to a defendant, were essentially rendered unavailable for most drug cases in light of the provisions of § 3553(b).

The mandatory aspect of subsection (b)(1) of § 3553 was held unconstitutional in *United States v. Booker*, 543 U.S. 220, 245, 125 S. Ct. 738, 756-57 (2005). In addition to *Booker*, the Supreme Court has discussed sentencing practices in two other important recent cases, *Kimbrough v. United States*, 128 S. Ct. 558 (2007) and *Gall v. United States*, 128 S. Ct. 586 (2007). Another legal upheaval of a different sort was

the action of the United States Sentencing Commission in reducing certain crack cocaine offense levels and making the reductions retroactive. The net effect of the Supreme Court action is to vest greater discretion in federal sentencing courts with the long-established Guidelines playing an advisory role. The action of the Sentencing Commission serves to narrow somewhat the differential in punishments for crack cocaine when compared to powder cocaine.

Notwithstanding the described sea change in federal sentencing law, there yet remain a number of open issues in this case. Foremost among them is the extent to which, if at all, this court is empowered to fully consider all of the factors of 18 U.S.C. 3553(a) by virtue of either or both pending motions. Another issue to be resolved is the extent to which this court is constrained to the ratio the Sentencing Commission has chosen for crack and powder cocaine offenses. A third issue is whether other sentencing factors besides Shelby's conduct in rendering substantial assistance to the government can be considered within the confines of the government's Rule 35 motion.

The vehicle for consideration of Shelby's motion for a reduction in his sentence is 18 U.S.C. § 3582(c)(2), dealing with lowering of a sentencing range by action of the Sentencing Commission. Section 3582 itself states that the court "may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent

that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The case of *United States v. Hicks*, 472 F.3d 1167 (9th Cir. 2007), directly addressed the effect of *Booker* on the policy statements contained as part of the Sentencing Guidelines.

In holding that a mandatory system is no longer an open choice, to the extent that policy statements would have the effect of making the Guidelines mandatory, *Booker* established that they must be void. Id. at 1170. Booker emphasized that the Guidelines could not be construed as mandatory in one context and advisory in another. 543 U.S. at 266, 125 S. Ct. at 768. As a consequence, district courts are necessarily endowed with the discretion to employ the § 3553 factors when issuing new sentences under § 3582(c)(2). The ease and simplicity of mandatory calculations can no longer stand as a substitute for the evaluation of relevant factors necessary to a determination of just punishment. *See Hicks,* 472 F.3d at 1170.

We recognize that there are a number of decisions and opinions contrary to the decision in *Hicks*. There is presently no Seventh Circuit case on point. However, based on the teaching of *Booker* and the reasoning of *Hicks*, we believe the better view is that policy statements, like the substantive Guideline provisions, are advisory only and do not preclude consideration of all of the sentencing factors of § 3553(a) in this case. As a result, Shelby's motion itself affords a basis for de novo review and

- 5 -

imposition of a sentence that is not constrained by Commission policy statements or the ratio it chose for crack and powder cocaine offenses.

The third issue described above is whether sentencing factors other than the defendant's conduct in rendering substantial assistance to the government can be considered within the confines of the government's Rule 35 motion. Although it is not essential to decide this issue in view of our belief that Shelby's own motion is the springboard to evaluate all of the § 3553(a) sentencing factors, we believe it is appropriate to do so. In this instance, we believe there is recent precedent from the Court of Appeals for the Seventh Circuit that affords an independent basis to consider the full § 3553(a) sentencing factors for Shelby even though the government's motion is confined to Shelby's substantial assistance to the government. In the quite recent case of *United States v. Bush*, 523 F.3d 727 (7 Cir. 2008), the Seventh Circuit reviewed a plea bargain between defendant Bush and the government. In return for Bush's plea of guilty to a drug distribution count and his substantial assistance to the government, the government agreed to move for a two-level reduction in the calculation of the drug Guideline and dismissal of a firearms count. The government so moved the court and, in addition, dismissed an § 851 information that increased Bush's mandatory minimum sentence to 20 years' imprisonment and further moved to release Bush from the normal mandatory minimum sentence of 10 years. The court granted the government's motion

- 6 -

in its entirety, producing a sentencing range of 100 to 125 months' imprisonment based on a criminal history category of IV.  Not simply content that the government more than lived up to its part of the plea agreement, defendant Bush insisted that his sentence should be reduced still further, to 63 months, based on his perceived unfairness of the 100:1 crack/powder ratio.  The district court declined Bush's request and sentenced him to 96 months' imprisonment.  After the Seventh Circuit heard arguments in the *Bush* case but before it decided the appeal, the Supreme Court issued its decision in *Kimbrough*.

The Seventh Circuit ordered supplemental briefing in *Bush* in light of *Kimbrough*.  Determining that *Kimbrough* clarified that Congress did not mandate the 100:1 ratio to all crack offenses and that a court may reduce a defendant's sentence below the Guidelines range in a routine crack-related case if it is convinced that the ratio alone unfairly punishes the defendant, the Seventh Circuit remanded the case for resentencing.  The twofold significance of the *Bush* decision is that the Seventh Circuit allowed consideration of sentencing factors not related to substantial assistance in a motion filed by the government for that sole reason and that *Kimbrough* permitted de novo review of a drug sentence unconstrained by a 100:1 or any other crack/powder ratio.  Aside from timing differences in the filing of the government's motion in *Bush* (pre-sentence) as opposed to the Rule 35 motion in the instant case (post-sentence), the

- 7 -

two motions are the same.  Accordingly, we believe the government's motion in this case affords this court the ability to consider all of the sentencing factors set forth in 18 U.S.C. § 3553.

In writing for the Supreme Court in *Kimbrough*, Justice Ginsburg said that in the ordinary case, the Sentencing Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives. But the crack cocaine Guidelines presented no elaborative discussion of the level of review for an outside the heartland sentence for two reasons.  *Kimbrough* describes the Sentencing Commission's departure from its empirical approach in formulating the crack Guidelines.  The Commission had offered criticism of the crack/powder ratio and recommended changes to the ratios to Congress in 1997 and again in 2002.  These two Commission reports followed Congress's rejection of an amendment in 1995 establishing a 1:1 ratio.  The continued criticisms by the Commission of the crack Guidelines was based on its research and experience with the 100:1 ratio and was multi-faceted.  The empirical studies the Sentencing Commission engaged in were rejected by Congress, thereby producing Guidelines driven by the minimum mandatory sentences set by Congress, which the Sentencing Commission believed to be excessive.

In *Kimbrough*, the government acknowledged that the Guidelines are now advisory and that, as a general matter, courts may vary from Guideline ranges based

- 8 -

solely on policy considerations, including disagreements with the Guidelines. A district court may consider arguments that the Guideline sentence itself fails properly to reflect § 3553 (a) considerations. In the ordinary case, the Sentencing Commission's recommendation of a sentencing range "will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 127 S. Ct. 2456, 2464-65 (2007). The sentencing judge, on the other hand, is in a superior position to apply the statutory factors to the circumstances of a particular defendant and impose a sentence consistent with the facts and law.

It seems plain that, aside from mandatory sentences set by Congress, federal district judges are free to consider the full panoply of sentencing considerations expressed in 18 U.S.C. § 3553(a) and to differ from the Guidelines when the judicious application of discretion requires it. *Kimbrough* teaches that, and reason and fairness permit no alternative.

The statutory provisions of 18 U.S.C. § 3553 are what command the process of sentence determinations. This Court has had the benefit of detailed written submissions from counsel and others, in addition to holding two hearings for the purpose of ruling on the motions before the Court. The advocacy for both sides has been excellent, and the relevant sentencing criteria have been fully discussed and argued. The original sentencing hearing held on March 7, 1996, reflected the court's view that Gregory

- 9 -

Shelby was a drug dealer and gang member and that he had committed serious drug crimes. The court told Shelby that he deserved to be punished severely but added the following: "But the sentence you are facing at your age, if I were free to sentence you, I would not give you this high of a sentence. You deserve to be punished severely. The Guideline calculations and the gun count take us well past what might be necessary, both to punish you and to provide some measure of deterrence and to vindicate these laws, but I do not have that freedom, Mr. Shelby, and I do not know what else to tell you to make it easier." Tr. 3/7/96, pp. 157-58.

At the age of 26, Shelby was committed to spend the next 24 ½ years of his life in a federal prison. He has served a little better than half of his sentence at this point. As previously stated, the sentence imposed was mandated by the Sentencing Guidelines and its structure predicated on minimum mandatory statutory provisions and the consecutive sentence for the firearm conviction. As is also readily apparent from a reading of the sentencing hearing transcript, had the Guidelines been advisory rather than mandatory, Shelby's sentence would not have been so severe.

The passage of more than thirteen years has seen more than changes in federal sentencing law. Changes in people have also occurred. We have seen such changes in Shelby. At the time of his sentencing, Shelby offered the court lies about the nature and extent of his drug dealing and declined to supply information about any of his

accomplices.  While in prison, he undertook to assist the government by telling them what he knew, even as the effort exposed him and members of his family to a risk of great harm.  It was the successful assumption of that risk that has prompted the government to file its motion to reduce Shelby's sentence, although not to the extent sought by Shelby.

Other changes have also occurred.  While in prison, Shelby earned his GED certificate and took other educational courses available to him.  His mother died of breast cancer at 55, and Shelby was unable to offer his comfort or support in her dying days.  His lament, expressed before the Court, appeared genuine.  When he was 23, he got into the selling of drugs, in part because gang members romanticized the experience and what doing so could or would bring him.  The "streets grabbed him," and he went willingly.  Serving thirteen plus years has taught him the emptiness of the gang members' enticements.

To their credit, and to Shelby's, his family has never abandoned him and their regular court attendance is worthy of note.  Unlike many others similarly situated, Shelby has been promised a job in a family business, and there is no basis to doubt his expressed desire to prove he can be a productive citizen.

That Shelby committed serious crimes is beyond rational dispute.  That the statutorily mandated sentences for the drug violation of (at least) 10 years with an

additional 5 years for his related gun violation represent substantial punishment for his crimes is equally apparent. A prison sentence of 15 years for Shelby adequately reflects the seriousness of his offenses, promotes respect for the law, and provides just punishment. Additionally, it affords adequate deterrence to future criminal conduct not only for Shelby but also for those who may think about the consequences of like criminal acts.

For Shelby, a sentence of that length will afford him the opportunity to salvage the rest of his life as a free man and to pursue available educational or vocational training that may be appropriate. The Court has struggled to find a justification for lengthening Shelby's sentence beyond 15 years—whether to 18 or 20 years or more —and is simply unable to do so. While nobody other than Shelby can guarantee his future as a productive, law-abiding citizen, any humane system of crime and punishment should afford—at least for non-capital cases—the opportunity for rehabilitation and redemption if the sentencing considerations of 18 U.S.C. § 3553 are to be honored and satisfied.

The discussions, observations, and reasons addressed by the court at the hearing on April 23, 2008, are hereby incorporated into and form a part of the basis for the court's decision.

- 12 -

In conclusion, both motions before the court are granted.  It appears both futile and unnecessary to compartmentalize which motion should bear what particular portion of the sentencing reduction ordered today.   In the end, both motions can operate independently to produce the result reached.  Shelby's sentence on Count One shall be 10 years and his sentence on Count Two shall be 5 years, for a total sentence of 15 years in the custody of the Bureau of Prisons.  We will leave it to the Bureau of Prisons to calculate his release date as soon as possible in light of the service of a substantial portion of that sentence. The period of supervised release and the fine and other conditions imposed at the March 7, 1996 hearing are reimposed.

It is so ordered.

Charles P. Kocoras
United States District Judge

Dated:   June 30, 2008

- 13 -

CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the aforenamed document  was  served pursuant to the district court's ECF system as to ECF filers on August 6, 2008.

 /s/    Madeleine S. Murphy
MADELEINE S. MURPHY
Assistant United States Attorney
219 South Dearborn Street - 5000
Chicago, Illinois 60604
(312)  886-2070