IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 95 CR 242-6 |
| v. | ) | |
| | ) | Hon. Robert Gettleman |
| ANDRE WILLIAMS | ) | |

> *"I write this letter in support of Andre Williams[] . . . Mr. Williams was sentenced to 40 years of incarceration based upon what this court and the government itself acknowledge was an 'incorrect' criminal history indicating Mr. Williams was a 'career offender.' . . . [T]he court strongly recommends . . . that Mr. Williams' sentence be reduced. . . ."*
>
> -- U.S. District Court Judge Robert Gettleman (2016)

### ANDRE WILLIAMS'S EMERGENCY MOTION FOR A REDUCED SENTENCE PURSUANT TO THE FIRST STEP ACT

The parties agree that DEFENDANT ANDRE WILLIAMS is serving a 40-year sentence based upon a scrivener's error. Section 404 of the FIRST STEP Act of 2018, enacted on December 21, 2018, independently authorizes a district court to impose a reduced sentence for crack-cocaine convictions where the statutory penalty provisions of the Fair Sentencing Act would have applied had the Act been in effect at the time of the original sentencing. The 2010 Fair Sentencing Act's reduced penalty structure would have applied to Andre Williams' crack offense had that Act been in effect when he was sentenced. Accordingly, this Court is authorized to impose a reduced sentence under Section 404.

The FIRST STEP Act now offers the Court the opportunity to impose a reduced sentence. As further explained below, ANDRE WILLIAMS, by his attorney MIANGEL CODY of THE DECARCERATION COLLECTIVE, respectfully moves for a sentence

1

reduction pursuant to Section 404 of the First Step Act. The Court should reduce Mr. Williams's sentence to 292 months' imprisonment, which, in this case, amounts to a sentence of time served. **Counsel files the instant motion seeking emergency relief because Mr. Williams is overserving time in prison.[1]**

## I.    INTRODUCTION

Andre Williams (Williams) has been in custody for nearly 24 years, almost half of his life. He was ordered detained in this case shortly after his 25th birthday, and has remained in custody ever since (April 20, 1995 – present). This case marks the first time that Williams has ever been sentenced to any time in the penitentiary. Previously, he spent a few months at Cook County jail when he was found to have violated probation, but he never set foot in the Illinois Department of Corrections or any other prison prior to his sentencing by this Court.

Williams's case is unusual in that the government, the defense and the Court all agree that he received an erroneous sentence: At his original sentencing, Williams was found to be a career offender even though he did not have the requisite predicate convictions to apply the recidivism enhancement. Williams remains in prison, not because anyone believes his incarceration protects the public, promotes rehabilitation, or is necessary to punish him for his involvement in this offense—all those goals were achieved long ago—but because he has

---

[1] Mr. Williams, currently serving a 480 month sentence, has a BOP release date of May 17, 2030. Mr. Williams has been in custody for approximately 286 months and, as a result, he would be eligible for immediate release if the Court reduces his sentence to 292 months. *See also* Docket #1987 (Government's Response to Mr. Williams's *pro se* "motion to vacate void judgment" (Dckt. #1968) at p. 14, "[i]f a resentencing were to occur, correction of Williams' erroneous classification as a career offender could significantly reduce his sentence."

2

never before had a procedural vehicle that allowed him to receive a sentence reduction from this Court. Section 404 of the First Step Act now presents an appropriate procedural vehicle that allows the Court to correct Mr. Williams's erroneous sentence.

The question for this Court then becomes "what should the new sentence be?" Nearly three years ago this Court supported Williams's petition for executive clemency, and recommended Williams's immediate release via presidential sentence commutation. Unfortunately, Mr. Williams did not receive clemency.

As detailed below, a total sentence of 292 months (time served) — unquestionably a staggering sentence for a person who, like Williams, had never before been to prison — would ensure that a significant penalty was imposed for Williams's convictions, but account for the historical errors that plagued his case.

## II. PROCEDURAL HISTORY

Williams, among others, was charged in Counts One, Two, and Fifteen through Twenty-One of a 36-count superseding indictment. Count One charged him with racketeering conspiracy in violation of 18 U.S.C. § 1962(d), Count Two charged him with narcotics conspiracy in violation of 21 U.S.C. § 846, Count Fifteen charged him with possession of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c), and Counts Sixteen through Twenty-One charged him with felon in possession in violation of 18 U.S.C. § 922(g). R. 411. Williams, along with other codefendants, stood trial and was convicted of the charges against him on June 7, 1996. R. 1028.

Williams was sentenced on April 10, 1998 to a total of 40 years' imprisonment: two concurrent 360-month terms on Counts One and Two of the superseding indictment; two

3

concurrent 120-month terms on the § 922(g) charges in Counts Sixteen through Twenty-One, and a consecutive 120 months on Count Fifteen, a § 924(c) charge. R.1443.

At the time Williams was sentenced, USSG § 2D1.1(c)(1)(1995) provided for a base offense level of 38 in cases involving, among other things, 30 kilograms or more of heroin, 150 kilograms or more of cocaine, or 1.5 kilograms of cocaine base, which was defined in USSG § 2D1.1(c) Commentary, Application Note (D), as "crack . . . a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." *Id.*

The total offense level of 41 was the result of a base offense level of 38 and a three-level enhancement for Mr. Williams's leadership role pursuant to USSG § 3B1.1(b). Williams PSI at 6. Williams's criminal history category of VI was the result of the operation of the career offender guideline, USSG § 4B1.1(a).[2]

## III. ARGUMENT

### A. Andre Williams is eligible for a reduced sentence under Section 404.

Section 404 of the FIRST STEP Act of 2018 independently authorizes a district court to impose a reduced sentence for crack-cocaine convictions where the statutory penalty provisions of the Fair Sentencing Act would have applied had the Act been in effect at the time of the original sentencing.

---

[2] The parties and the Court all agree that Mr. Williams was **erroneously** categorized as a career offender at his original sentencing. R. 2016. However, for purposes of the instant motion, Mr. Williams's "career offender" status is immaterial. Whether he is or is not a career offender (and all agree he is not), under Section 404 of the FIRST STEP Act, the Court has jurisdiction to reduce his sentence.

4

The Anti-Drug Abuse Act of 1986 imposed especially harsh statutory penalties for drug offenses involving crack cocaine. 100 Stat. 3207. Due to that Act, Section 841(b) to United States Code Title 21 provided, as of 1996, for three tiers of penalties for offender convicted of distributing or conspiring to distribute crack cocaine in violation of 21 U.S.C. § 841(a) or 846. Specifically:

- Section 841(b)(1)(C) provided for a sentencing range of up to 20 years if the offense involved less than 5 grams of crack cocaine;
- Section 841 (b)(1)(B)(iii) provided for a sentencing range of 5 to 40 years if the offense involved "5 grams or more" of crack cocaine; and,
- Section 841(b)(1)(A)(iii) provided for a sentencing range of 10 years to life if the offense involved "50 grams or more" of crack cocaine.

21 U.S.C. § 841(b) (1996).

On August 3, 2010, Congress enacted the Fair Sentencing Act of 2010 (the "FSA"). 124 Stat. 2372. It did so because the Sentencing Commission and public had long concluded that the 1986 Anti-Drug Abuse Act's penalty scheme for crack-cocaine offenses was far too harsh and had a disparate impact on African-American defendants. *See Dorsey v. United States*, 567 U.S. 260, 268-69 (2012). Specifically, Section 2 of the FSA changed the penalty structure for crack offenses, as follows:

- Section 841(b)(1)(C) now provides for a sentencing range of up to 20 years if the offense involved less than 28 grams of crack cocaine;
- Section 841(b)(1)(B)(iii) now provides for a sentencing range of 5 to 40 years if the offense involved "28 grams or more" of crack cocaine; and,
- Section 841(b)(1)(A)(iii) now provides for a sentencing range of 10 years to life if the offense involved "280 grams or more" of crack cocaine.

21 U.S.C. § 841(b) (2018); *see Dorsey,* 567 U.S. at 269 (explaining effect of Section 2 of the FSA).

The FSA went into effect immediately (August 3, 2010) and, to put an end to the "disproportionate status quo," the Supreme Court held that the FSA's new penalty structure would apply to any defendant sentenced after August 3, 2010, even if the offense was committed prior to that date. *Dorsey*, 567 U.S. at 278.

The FSA's remedial structure left intact the unfair sentences that were imposed from 1986 through 2010 under the pre-FSA penalty structure. The FIRST STEP Act of 2018 has now created a legislatively authorized remedy to retroactively reduce unfair pre-FSA crack penalties. The First Step Act authorizes the district court to reduce sentences for any prisoner who is still serving a sentence for a pre-FSA crack offense. Section 404 of the First Step Act establishes its remedy in two steps, and it clearly applies to Williams at each step.

First, the Act defines what offenses are covered by its remedy:

> Definition of Covered Offense: In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111- 220; 124 Stat. 2372), that was committed before August 3, 2010.

First Step Act, Title IV, Sec. 404(a).[3] Williams's drug offenses are "covered offenses." That is clearly so because Section 2 of the FSA "modified" the "statutory penalties" under § 841(b) for "violation[s]" of 21 U.S.C. §§ 841(a) and 846 that involved crack cocaine, which were in fact Williams's violations. And he committed those violations before August 3, 2010 (after all, he was sentenced by this Court in 1998 for conduct that took place between 1991 and 1995).

Second, the Act provides the circumstances under which a district court can reduce the sentence for defendants who were previously sentenced for a "covered offense":

> Defendants Previously Sentenced: A court that imposed a sentence for a covered offense may, on motion of the defendant . . . , impose a reduced sentence as if

---

[3] The official Public Law citation for the First Step Act is not yet available.

6

>Sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

*Id.*, Sec. 404(b). This provision plainly applies to Mr. Williams because this Court previously "imposed a sentence" on him "for a covered offense," and he is moving for imposition of a reduced sentence. Thus, this Court can now "impose a reduced sentence" on Williams for his crack-cocaine offenses as if the FSA were in effect when Williams was sentenced in 1998.

The only limitations on this resentencing power are aimed at preventing a defendant from receiving multiple reductions due to the FSA or from filing multiple motions for a Section 404 reduction. *Id.*, Sec. 404(c). Neither of these limitations apply to Williams. He is now serving his originally imposed 40 year sentence on the crack convictions, and this is his first Section 404 motion.

In sum, determining eligibility under the First Step Act is relatively straightforward. A defendant is eligible if he was convicted of a crack-cocaine offense, was sentenced when the pre-FSA statutory penalties were still in effect, and continues to serve a sentence that has not already been reduced to post-FSA levels. Because Williams satisfies these requirements, the Court has the authority to impose a reduced sentence for his crack convictions under Counts 1 and 2 of the Indictment.

Notably, the government has not opposed the type of reduction that Williams requests in other, similar cases. One such example is *United States v. Matthew Charles*, 3:96 CR 00051 (M.D. Tenn.) (Doc. 252). In the *Charles* case, the government plainly agreed that "Section 404 of the First Step Act appears to invest district courts with discretion to reduce an otherwise final sentence (subject to certain limitations not applicable here), when a defendant was sentenced for an offense whose penalties were modified by section 2 or 3 of

7

the Fair Sentencing Act of 2010." The government did not oppose a time-served sentence reduction to the defendant in the *Charles* case. Accordingly, on January 3, 2019, the district court exercised its legislatively authorized discretion to reduce the *Charles* defendant's sentence to time served. (Doc. 253). Similarly, within this Circuit, the government did not oppose a Section 404 sentence reduction in the Central District of Illinois case of *United States v. Edward Douglas*, 02 CR 20040 (Jan. 10, 2019, C.D. Ill.) (Doc. 150 (Government's Response agreeing to immediate release); Doc. 151(District Court Order Granting Motion and Ordering Immediate Release of the Defendant)).

Just as in the *Charles* and *Douglas* cases, Williams is eligible for a reduced sentence under Section 404 of the First Step Act. As this Court is well aware, Williams was erroneously classified as a career offender in his PSR and at his sentencing hearing before this Court.

Under the 2018 Guidelines Manual, Mr. Williams' current guideline calculations are as follows: U.S.S.G. § 2D1.1(c) prescribes a base offense level of 32 for 1.5 kilograms of cocaine base.[4] Williams continues to receive an additional three-level role adjustment, resulting in a total offense level of 35. Williams's criminal history category is VI. His current guideline range is 292 to 365 months' imprisonment.

---

[4] Though the FIRST STEP Act does not direct the Court to consider the guidelines or incorporate the guidelines as a limitation upon relief, counsel includes a current guideline calculation for the Court's reference. Notably, at the original sentencing, the Court did not make specific drug quantity findings as to Mr. Williams or his co-defendants. For purposes of calculating the advisory guideline range, the calculations above assume the Court accepted the government's proffered drug quantity finding of 1.5 kilograms of cocaine base.

8

### B. The Court should impose a total reduced sentence of 292 months imprisonment (time served).

[5]This Court has been candid about the reasons Williams remains in prison. It is **not** because he poses a severe danger to society; Andre had never spent a day in prison before his 40-year sentence and the sum total of his criminal history includes two prior teenage drug convictions, for which he received probation, and a trespassing conviction that resulted from his failure to sign a building visitor log in 1994. He does **not** remain in prison because releasing him would create an unwarranted disparity; in fact, the opposite is true: by this April, Williams will be the only person from his 19-defendant case to remain in prison.[6] **Rather**, Williams has remained in prison "based upon what this court and the government itself has acknowledged was an 'incorrect' criminal history."

> I write this letter in support of Andre Williams' petition for commutation of sentence. The reason is simple. Mr. Williams was sentenced to 40 years of incarceration based upon what this court and the government itself has acknowledge was an "incorrect" criminal history indicating that Mr. Williams was a "career offender."
>
> For these reasons, the court strongly recommends to the Pardon Attorney, and the President, that Mr. Williams' sentence be reduced to reflect the fact that he is not a career offender and that the Presentence Investigation Report erroneously labeled him as such.
>
> If you need any further information or input from me, please let me know.
>
> Very truly yours,
>
> Robert W. Gettleman
> United States District Judge

Congress has indicated that, under Section 404 of the First Step Act, the district court may impose a reduced sentence "as if" the FSA's reduced crack-cocaine penalties "were in effect at the time the covered offense was committed."[7] As such, **this Court at last has the**

---

[5] A copy of the Court's letter supporting Mr. Williams's clemency and immediate release is attached as Exhibit A.

[6] Even the conspiracy's top leader, Andrew Patterson, had his sentence reduced by retroactive guideline amendments and is due to be released April 3, 2019. Williams's four-decade sentence and 2030 release date is especially disparate in light of his mid-level role in the conspiracy. This disparity warrants an immediate reduction to time served.

[7] This broad grant of resentencing authority contains one implied limitation: The court cannot impose a sentence lower than the statutory mandatory minimum applicable under the FSA to the defendant's

**ability to resentence Mr. Williams and serve justice in this case**.

The Court should reduce Williams's total sentence to 292 months' imprisonment (time served), a term that is within the applicable 2018 guideline range, and is "sufficient, but not greater than necessary" pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. Sec. 3553(a). Mr. Williams has been in custody for nearly a quarter century – since April 20, 1995. He has served approximately 284 months of actual custody. Prison staff report that Williams is a "great communicator" and has "received positive work evaluations throughout his various assignments." Specifically, he has held work assignments in the BOP kitchens, in facilities and plumbing, in laundry service, and even as an Orderly, a position reserved for only the most trustworthy prisoners. He has completed more than 2,500 hours of institutional programming and his self-improvement progress is rated as "above average." In short, Williams has made the most of a lengthy – and erroneous – sentence. Williams deserves immediate release.

## IV.   CONCLUSION

WHEREFORE, based on the facts set forth above, Mr. Williams asks the Court to enter an order under Section 404 of the FIRST STEP Act that reduces Mr. Williams's sentence from 480 months to 292 months. To be clear, the new sentence should be:

- 172 months on counts 1 and 2 to run concurrently;

---

offense of conviction. For example, if a defendant was convicted at a *pre*-FSA trial in 2009 where the jury found he distributed "50 grams or more" of crack cocaine, his *post*-FSA mandatory minimum sentence would be five years because that is the post-FSA minimum for an offense involving 28 grams or more of crack. 21 U.S.C. § 841(b)(1)(B)(iii). In such a case, the district court, acting pursuant to Section 404, could not reduce the defendant's sentence below five years. In Williams's case, he does not seek a reduced sentence below the post-FSA mandatory minimum and further discussion of this potential limitation is irrelevant.

- 120 months on counts 16, 17, 18, 19, 20, 21 to run concurrently with each other and concurrently with the sentence imposed on counts 1 and 2; and,

- 120 months on count 15 to run consecutively to the terms of imprisonment on the other counts.

Such an order reduces the sentence imposed on Counts 1 and 2, and leaves the remainder of Mr. Williams's sentence unchanged. Mr. Williams agrees that, but for the changes to the custodial portion of his sentence related to Counts 1 and 2, the Judgment entered on April 17, 1998 should remain in full force and effect.

While Mr. Williams acknowledges that a complicated matter such as this motion would not ordinarily be brought on an emergency basis, it is likely that every day Mr. Williams spends in custody results in further over-service of the sentence he should have received. The Court and the government are well aware of the historical record and the issues raised by Mr. Williams's motion. It is defense counsel's understanding and profound belief that the government will not oppose a sentence reduction for Mr .Williams. Because of this unique set of circumstances, Mr. Williams brings this motion before the Court in the hope of attaining the relief that has eluded him for years.

Respectfully submitted,

By: _____
MiAngel Cody
*Counsel for Andre Williams*

THE DECARCERATION COLLECTIVE
1325 S. Wabash St., Ste. 305
Chicago, IL 60605  Ph: (312) 858-8330

11

## **CERTIFICATE OF SERVICE**

      The undersigned, MiAngel Cody, an attorney with The Decarceration Collective hereby certifies that on February 25, 2019, I electronically filed the following with the Clerk of the Court using the CM/ECF system:

**ANDRE WILLIAMS'S EMERGENCY MOTION FOR A
REDUCED SENTENCE PURSUANT TO THE FIRST STEP ACT**

<u>/s/ MiAngel Cody</u>
MIANGEL CODY

THE DECARCERATION COLLECTIVE
LAW OFFICE
1325 S. Wabash St., Ste 305
Chicago, IL 60607

# EXHIBIT A:

# JUDGE GETTLEMEAN'S LETTER IN SUPPORT OF CLEMENCY AND IMMEDIATE RELEASE



# United States District Court
### Northern District of Illinois
### 219 South Dearborn Street
### Chicago, Illinois 60604

Chambers of
Robert W. Gettleman
Judge

(312) 435-5543

June 6, 2016

U.S. Pardon Attorney
1425 New York Avenue, NW
Suite 11000
Washington, DC 20530

Re:  Application for Sentence Commutation from Andre Williams
     Docket No. 95 CR 242-6
     Reg. No. 06586-242

Dear Pardon Attorney:

    I write this letter in support of Andre Williams' petition for commutation of sentence. The reason is simple. Mr. Williams was sentenced to 40 years of incarceration based upon what this court and the government itself has acknowledge was an "incorrect" criminal history indicating that Mr. Williams was a "career offender."

    In fact, the career offender status was the result of a scrivener's error in the underlying state criminal proceeding, which indicated that he had pled guilty to possession of a controlled substance with intent to distribute, when in fact he had pled only to simple possession. Although both this court and the government acknowledged this serious error in computing Mr. Williams' then-mandatory Guideline sentence, because the judgment had become final there was no judicial remedy to correct it. Both the government and this court recommended that Mr. Williams pursue his efforts to remedy the situation through executive clemency, which is exactly what he is doing now.

    For these reasons, the court strongly recommends to the Pardon Attorney, and the President, that Mr. Williams' sentence be reduced to reflect the fact that he is not a career offender and that the Presentence Investigation Report erroneously labeled him as such.

    If you need any further information or input from me, please let me know.

Very truly yours,

Robert W. Gettleman
United States District Judge

RWG:mjs
cc:    Zachary T. Fardon, U.S. Attorney
       Andre Williams
       Robert A. Zauzmer, Acting Pardon Attorney